# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 72

APRIL TERM, A.D. 2013

June 12, 2013

DANIEL RAY BOWLSBY,

Appellant
(Defendant),

v.

No. S-12-0078

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Fremont County*
*The Honorable Norman E. Young, Judge*

*Representing Appellant:*

> Diane M. Lozano, State Public Defender; Tina N. Olson, Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel. Argument by Mr. Alden.

*Representing Appellee:*

> Gregory A. Phillips, Attorney General; David L. Delicath, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Joshua Eames, Student Intern. Argument by Mr. Eames.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE:** This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BURKE, Justice.**

[¶1]  Pursuant to a plea agreement, Daniel Ray Bowlsby pled guilty to one count of sexual abuse of a minor in the first degree and one count of incest. Both charges were based on the same incident involving his stepdaughter. In accordance with the plea agreement, the State dismissed seven additional charges pending against Mr. Bowlsby. On appeal, Mr. Bowlsby contends that incest is a lesser included offense of sexual abuse of a minor in the first degree, and, under principles of double jeopardy, claims that it was improper to convict him of both crimes. He asserts that his conviction and sentence for the crime of incest should be vacated. We conclude that the crime of incest is a lesser included offense of the crime of first degree sexual abuse of a minor as charged in this case. Accordingly, we will reverse Mr. Bowlsby's conviction and sentence for the crime of incest and remand for further proceedings.

## ISSUE

[¶2]  The dispositive issue presented by Mr. Bowlsby is whether his constitutional right not to be placed in double jeopardy was violated when, based on the same act with the same victim, he was convicted of both incest and sexual abuse of a minor in the first degree.

## FACTS

[¶3]  Mr. Bowlsby was charged with nine crimes relating to alleged sexual contacts with his two stepdaughters. Prior to trial, Mr. Bowlsby and the State entered into a plea agreement. Mr. Bowlsby agreed to plead guilty to one count of sexual abuse of a minor in the first degree in violation of Wyo. Stat. Ann. § 6-2-314(a)(ii) (LexisNexis 2007), and one count of incest in violation of Wyo. Stat. Ann. § 6-4-402(a)(iii). The prosecution agreed to dismiss the remaining charges. The State also agreed that it would recommend that the sentences on the two counts be concurrent, and that the sentence would not exceed forty years. When he entered his guilty pleas, Mr. Bowlsby admitted that he had engaged in sexual intercourse with his seventeen-year-old stepdaughter. The prosecution made it clear that both charges stemmed from this single event, and were "based on the same factual basis."

[¶4]  The district court accepted the guilty pleas and dismissed the other counts. Mr. Bowlsby was sentenced to a term of thirty-five to forty years imprisonment on the count of sexual abuse of a minor in the first degree, and to a term of thirteen to fifteen years on the count of incest, with the two terms to be served concurrently. Mr. Bowlsby subsequently filed a timely appeal.

## DISCUSSION

[¶5]  As a preliminary matter, we note that Mr. Bowlsby entered unconditional guilty

1

pleas to both charges. A guilty plea waives all non-jurisdictional defenses. *Sword v. State*, 746 P.2d 423, 425 (Wyo. 1987). Jurisdictional defenses are not waived, however, and we have previously recognized that double jeopardy is a jurisdictional defense. *Davila v. State*, 831 P.2d 204, 205-06 (Wyo. 1992).[1] Mr. Bowlsby's guilty plea did not waive his double jeopardy claim, and does not preclude our review. *See Haynes v. State*, 2012 WY 151, ¶ 12, 288 P.3d 1225, 1228 (Wyo. 2012); *Thomas v. Kerby*, 44 F.3d 884, 888 (10th Cir. 1995).

[¶6]    We also note that Mr. Bowlsby failed to present his double jeopardy claim to the district court. We will therefore review for plain error.

> "Even when constitutional error is alleged, each criterion must be satisfied or a claim for review under the plain-error doctrine will fail." *Miller v. State*, 904 P.2d 344, 348 (Wyo. 1995). To establish plain error, the appellant must prove (1) the record clearly reflects the alleged error; (2) the existence of a clear and unequivocal rule of law; (3) a clear and obvious transgression of that rule of law; and (4) the error adversely affected a substantial right resulting in material prejudice to him. *Sanchez v. State*, 2006 WY 12, ¶ 19, 126 P.3d 897, 904 (Wyo. 2006).

*Snow v. State*, 2009 WY 117, ¶ 13, 216 P.3d 505, 509 (Wyo. 2009).

[¶7]    In this case, the record clearly reflects the alleged error. There is also no dispute that an improper conviction and sentence satisfies the prejudice prong of the plain error test.[2] We must determine if there has been a violation of a clear and unequivocal rule of

---

[1] In *Snow v. State*, 2009 WY 117, ¶ 13 n.6, 216 P.3d 505, 509 n.6 (Wyo. 2009), we noted that "our jurisprudence is not entirely consistent in considering the question of whether a double jeopardy allegation is non-jurisdictional, and therefore can be waived, or is jurisdictional, and therefore cannot be waived." However, we determined that "Because the double jeopardy protections 'involve the state's power to bring the defendant into court,' we will in this case treat double jeopardy as jurisdictional, and will address it even though there was no objection below." *Id.* In the present case, the State does not contend that Mr. Bowlsby waived his double jeopardy claim by entering a guilty plea. Because the issue has not been raised, we will proceed as we did in *Snow.*

[2] As the United States Supreme Court explained in *Ball v. United States*, 470 U.S. 856, 864-65, 105 S.Ct. 1668, 1673, 84 L.Ed.2d 740 (1985):

> The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate conviction, apart from the concurrent sentence, has potential adverse collateral consequences that may not be

law.

[¶8]     The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The parallel provision of the Wyoming Constitution, Article 1, Section 11, provides that no person shall "be twice put in jeopardy for the same offense." We have held that the state and federal provisions are equivalent. *James v. State*, 2012 WY 35, ¶ 9, 271 P.3d 1016, 1018 (Wyo. 2012); *Daniel v. State*, 2008 WY 87, ¶ 8, 189 P.3d 859, 862 (Wyo. 2008). "We have repeatedly stated that the double jeopardy clause provides three protections: '[I]t prohibits a second prosecution for the same offense after an acquittal; a second prosecution for the same offense after a conviction; and multiple punishments for the same offense.'" *Owen v. State*, 902 P.2d 190, 192 (Wyo. 1995), quoting *Rivera v. State*, 840 P.2d 933, 942 (Wyo. 1992). Because the double jeopardy clause prohibits multiple punishments for the same offense, a person may not be punished for both a greater offense and a lesser included offense based on the same incident. *Daniel*, ¶ 8, 189 P.3d at 862, citing *Ohio v. Johnson*, 467 U.S. 493, 501, 104 S.Ct. 2536, 2542, 81 L.Ed.2d 425 (1984) and *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

[¶9]     The parties agree that, to determine whether incest is a lesser included offense of sexual abuse of a minor in the first degree, the test to be applied is set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932): "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." We adopted this test years ago, *State v. Keffer*, 860 P.2d 1118, 1131 (Wyo. 1993), and have relied upon it many times since, most recently in *Silva v. State*, 2012 WY 37, ¶ 24 n.4, 271 P.3d 443, 451 n.4 (Wyo. 2012). Stating the test another way, a crime is a lesser included offense "if its elements are a subset" of the elements of the greater offense. *Heywood v. State*, 2007 WY 149, ¶ 10, 170 P.3d 1227, 1230 (Wyo. 2007); *Dean v. State*, 2003 WY 128, ¶ 14, 77 P.3d 692, 697 (Wyo. 2003). According to the State, "The same-elements test . . . is the 'clear and unequivocal rule of law' that Bowlsby must

---

> ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction. *See Benton v. Maryland*, 395 U.S. 784, 790-791 (1969); *Sibron v. New York*, 392 U.S. 40, 54-56 (1968). Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment.

(Emphasis omitted.) *See also Rutledge v. United States*, 517 U.S. 292, 302, 116 S.Ct. 1241, 1248, 134 L.Ed.2d 419 (1996).

show was transgressed if he is to establish plain error." We agree with that proposition.[3]

[¶10] The elements of a crime – the facts requiring proof under the *Blockburger* test – are derived from the statute defining that crime. Mr. Bowlsby was convicted of incest in violation of Wyo. Stat. Ann. § 6-4-402, which provides as follows:

> (a) A person is guilty of incest if he **knowingly** commits sexual intrusion, as defined by W.S. 6-2-301(a)(vii), or sexual contact, as defined by W.S. 6-2-301(a)(vi), with an ancestor or descendant or a brother or sister of the whole or half blood. The relationships referred to herein include relationships of:
>
> . . .
>
> (iii) Stepparent and stepchild.

(Emphasis added.) Mr. Bowlsby was also convicted of sexual abuse of a minor in the first degree in violation of Wyo. Stat. Ann. § 6-2-314(a)(ii), which provides as follows:

> (a) An actor commits the crime of sexual abuse of a minor in the first degree if: . . .
>
> (ii) Being eighteen (18) years of age or older, the actor inflicts sexual intrusion on a victim who is less than eighteen (18) years of age, **and the actor is** the victim's legal guardian or **an individual specified in W.S. 6-4-402.**

(Emphasis added.) The statute referred to in Wyo. Stat. Ann. § 6-2-314(a)(ii) is the same incest statute that Mr. Bowlsby was convicted of violating.

[¶11] The specific issue we must address is whether "knowledge of the family relationship" is an element of both of the crimes set forth above. Mr. Bowlsby contends that incest is a lesser included offense of the crime of first degree sexual abuse of a minor under Wyo. Stat. Ann. § 6-2-314(a)(ii). He claims that the crime of first degree sexual abuse of a minor contains all of the elements that are necessary to the crime of incest,

---

[3] Mr. Bowlsby argues only that his incest conviction must be set aside under the "same elements" test of *Blockburger*. He does not contend that his incest conviction merged into his conviction for first degree sexual abuse of a minor because it arose from the same act under *Najera v. State*, 2009 WY 105, 214 P.3d 990 (Wyo. 2009), *Bilderback v. State*, 13 P.3d 249 (Wyo. 2000), *Rouse v. State*, 966 P.2d 967 (Wyo. 1998), and *Owen*, 902 P.2d 190. We therefore analyze his arguments only under the *Blockburger* standard.

4

including the defendant's knowledge of the familial relationship between the defendant and the victim. Relying solely on 21 Am.Jur.2d *Criminal Law* § 117 (2013), which provides that "Mens rea is generally an essential element of any criminal offense, and exceptions to this rule normally occur only where the legislature clearly determines otherwise," he asserts that knowledge of the familial relationship "is required under both statutes by the general requirement of *scienter . . .* implicit in all criminal laws under the concept of *mens rea* unless clearly excluded by the legislature."[4] (Emphasis in original.)

[¶12] The State agrees that knowledge of the familial relationship is an element of incest, citing several authorities for the proposition that "the courts of numerous other states with similar incest statutes have recognized that knowledge of the familial relationship is an essential element of the crime of incest." It contends, however, that knowledge of the family relationship is not an element of the crime of first degree sexual abuse of a minor. With respect to this assertion, the State fails to provide any cogent supporting analysis. Rather, it simply concludes that "To prove incest, the State would have to prove the additional element that Bowlsby had actual knowledge of his familial relationship with his victim, an element of scienter not contained in the sexual abuse statute § 6-2-314(a)(ii)."[5]

[¶13] While we have not yet had occasion to determine whether Wyoming's incest statute requires knowledge of the familial relationship with the victim, as noted by the State, the issue has been addressed by legal commentators and courts in a number of jurisdictions. Uniformly, they conclude that knowledge of the relationship is an element

---

[4] Because the issue is raised in the context of a double jeopardy violation, Mr. Bowlsby's primary concern is that knowledge of the family relationship be treated similarly in analyzing both statutes. Initially, he contended that knowledge of the family relationship was not an element of either crime. He raised the scienter issue in response to the State's contention that knowledge of the family relationship was an element of incest but not sexual abuse of a minor in the first degree.

[5] The State's position is at odds with the language of Wyoming Criminal Pattern Jury Instruction 44.02A, which sets forth the elements of incest. According to that instruction, the elements of incest are:

> 1. On or about the _____ day of _____, 20___
> 2. In _____ County, Wyoming
> 3. The Defendant, _____
> 4. Committed [sexual intrusion] [sexual contact]
> 5. With [an ancestor] [a descendant] [a {brother} {sister} of the whole
> or half blood].

Because this issue was presented in this case as a double jeopardy violation, the State focused on establishing differences in the elements of both crimes. Had the matter been presented as a challenge to the sufficiency of an elements instruction in accord with the pattern instruction, the State may have taken a different approach. *See, e.g., State v. Hargrove,* 108 N.M. 233, 235, 771 P.2d 166, 168 (1989), discussed *infra,* ¶ 14.

of the crime of incest. *See, e.g., Monroe County Dep't of Human Servs. v. Kelli B. (In re Zachary B.)*, 2004 WI 48, ¶ 4, 271 Wis.2d 51, 58, 678 N.W.2d 831, 833 (2004); *Standridge v. State*, 357 Ark. 105, 120, 161 S.W.3d 815, 823 (2004); *State v. Vann*, 976 S.W.2d 93, 106 (Tenn. 1998); *State v. Calle*, 125 Wn.2d 769, 778, 888 P.2d 155, 159 (1995); *Carmichael v. State*, 255 Kan. 10, 19, 872 P.2d 240, 246 (1994); *State v. Hargrove*, 108 N.M. 233, 235, 771 P.2d 166, 168 (1989); *People v. Parker*, 123 Ill.2d 204, 210, 526 N.E.2d 135, 138 (1988); *State v. Forman*, 466 So.2d 747, 748 (La. App. 1985); *Robinson v. United States*, 452 A.2d 354, 359 (D.C. 1982); *State v. Vincent*, 278 N.C. 63, 64, 178 S.E.2d 608, 609 (1971); *State v. Daniels*, 169 Ohio St. 87, 98, 157 N.E.2d 736, 744 (1959); *State v. Winslow*, 30 Utah 403, 408, 85 P. 433, 435 (1906); *Rea v. Harrington*, 58 Vt. 181, 185, 2 A. 475, 478 (1886); 2 Charles E. Torcia, *Wharton's Criminal Law* § 239 (15th ed. 2012) ("In order to be guilty of incest, the accused must know that the person . . . with whom he is having sexual intercourse is related to him within a prohibited degree of consanguinity or affinity."); 41 Am.Jur.2d *Incest* § 11 (2013) ("Elements of the crime of incest by sexual intercourse generally include sexual conduct between two persons within the prohibited degree of consanguinit[y], and the defendant's knowledge of their relationship."); 42 C.J.S. *Incest* § 9 (2013) ("Typically, knowledge of the relationship on the part of [the] accused is an essential element of the offense [of incest].").

[¶14]   We note that, in the present case, there is no dispute that Mr. Bowlsby knew that the victim was his stepdaughter.  However, in interpreting the statutes in question, we must also take account of the potential scenario in which a defendant engages in "unwitting" or "accidental" incest, where the defendant does not have knowledge of the familial relationship.  Mr. Bowlsby offers the example of an anonymous sperm donor who may have no reason to know that his sexual contact is with his progeny.  The possibility also arises in cases of adoption, as in the Athenian tragedy, *Oedipus Rex*.[6]  The problem of accidental incest is not merely fictional or theoretical.  It was raised in *Hargrove*, 108 N.M. at 236, 771 P.2d at 169:

> At oral argument, a question also was raised concerning
> whether prohibited relationships under Section 30-10-3
> include a child fathered by someone other than the defendant
> during defendant's marriage to the mother.  The relevance of

---

[6] In the version of the story told by Sophocles, Oedipus, the biological son of King Laius and Queen Jocasta of Thebes, is discarded on a mountain top to avoid the prophecy that he will murder his father and marry his mother.  Oedipus is eventually rescued by a shepherd and adopted by King Polybus and Queen Merope of Corinth. After learning of the prophecy, Oedipus journeys from Corinth in order to avoid causing harm to Polybus and Merope.  On his way to Thebes, Oedipus slays Laius, who he does not realize is his true father. Oedipus subsequently marries Laius' widow, Jocasta, Oedipus' biological mother.  Sophocles, *The Three Theban Plays: Antigone, Oedipus the King, Oedipus at Colonus*, (Robert Fagles, Bernard MacGregor Knox trans., Viking Penguin, 1984).

this question stemmed from defendant's testimony that, at the time of the offense, he believed Rebecca to have been fathered by another man during the time the defendant was married to Rebecca's mother. If the defendant's knowledge that he was the biological father of Rebecca was factually in issue, then error in failure to instruct on the essential element of knowledge would be jurisdictional.

The statute at issue in that case, N.M. Stat. Ann. § 30-10-3, provided that "Incest consists of knowingly intermarrying or having sexual intercourse with persons within the following degrees of consanguinity: parents and children including grandparents and grandchildren of every degree, brothers and sisters of the half as well as of the whole blood, uncles and nieces, aunts and nephews." The defendant contended that he did not know that he was the father of the victim. On appeal, he challenged the adequacy of the elements instruction. He contended that the instruction failed to advise the jury that knowledge of the relationship was an element of the crime of incest. The New Mexico Supreme Court agreed and reversed the conviction. In determining that knowledge of the familial relationship was an element of the crime of incest, the court reasoned as follows:

> The State concedes that failure to instruct on an essential element may be raised for the first time on appeal, *see State v. Bell*, 90 N.M. 134, 560 P.2d 925 (1977), but maintains that the jury instructions, read as a whole, properly included the essential elements of the crime of incest. The State argues that the jury was instructed on the definition of "intentionally" and asserts that "intentionally" is an adequate substitute for "knowingly". We do not agree that the instruction, which informs the jury of the necessity to find general criminal intent in addition to the other elements of the charged offense, SCRA 1986, 14-141, was sufficient to instruct the jury that knowledge of the prohibited blood relationship is an essential element of incest. As stated in *Hittson*, "the free act of the one being tried, *with knowledge of the relationship*" is required to convict one of incest. 57 N.M. at 102-03, 254 P.2d at 1065 (emphasis added). Knowledge and intent are separate, not synonymous, elements.

> . . .

> The issue, however, was whether the defendant knew Rebecca was his biological daughter when the acts of sexual intercourse charged in Counts II and VIII were committed. The defendant's testimony that at one time he believed Rebecca to be his "adopted" daughter demonstrates that the

7

> defendant did not concede that at the time he had intercourse with Rebecca he knew she was his biological daughter. Accordingly, the failure to instruct the jury that, as an essential element of incest in Counts II and VIII, it had to find beyond a reasonable doubt that the defendant had knowledge of the prohibited blood relationship requires that the convictions on those counts be reversed.

*Hargrove*, 771 P.2d at 169, 170. In its structure and its use of the term "knowingly," the New Mexico incest statute cannot be distinguished from Wyoming's incest statute.

[¶15] We agree with both parties that knowledge of the familial relationship is an element of the crime of incest. Initially, however, we note that whether knowledge of the family relationship is an element of the crime of incest is not immediately apparent from the language of Wyo. Stat. Ann. § 6-4-402(a). The statute does not explicitly state that knowledge of the family relationship is required for conviction.[7] The incest statute contains the word "knowingly," but the use of that word does not lead directly to the conclusion that knowledge of the family relationship is an element of the crime. From a grammatical perspective, the term modifies the act ("knowingly commits sexual intrusion"), not the relationship ("with an ancestor or descendant … or stepparent and stepchild"). *See Management Council of the Wyoming Legislature v. Geringer*, 953 P.2d 839, 844 (Wyo. 1998), citing John M. Kierzek & Walker Gibson, *The MacMillian Handbook of English*, 414 (6th ed., Revised by, Robert F. Willson, Jr. 1977); *see also Evans v. Farmers Ins. Exch.*, 2001 WY 110, ¶ 11, 34 P.3d 284, 287 (Wyo. 2001). However, following United States Supreme Court precedent, we find that the interpretation suggested by a grammatical reading of the statute must yield to the presumption, deeply embedded in our criminal law, in favor of "broadly applicable scienter requirements, even where the statute by its terms does not contain them." *United States v. X-Citement Video*, 513 U.S. 64, 70, 115 S.Ct. 464, 468, 130 L.Ed.2d 372 (1994). This principle extends equally to statutes, such as the statute defining first degree sexual abuse of a minor, where no mental state is specified. Ultimately, our analysis rests on the principle that a statute should not be interpreted to criminalize otherwise innocent conduct absent a clear indication of the legislature's intent to impose criminal liability without regard to the defendant's knowledge of the necessary elements of the crime. As discussed below, we find several factors indicating that the legislature *did not* intend to impose criminal liability for incest or first degree sexual abuse of a minor absent the defendant's knowledge of the necessary familial relationship. Accordingly, we agree with Mr. Bowlsby and conclude that such knowledge is an element of both crimes.

---

[7] An example of statutory language containing such a requirement is contained in Wyo. Stat. Ann. § 6-4-401(a), Wyoming's bigamy statute, which provides that "A person commits bigamy if, being married and knowing that his spouse is alive, he marries again."

8

[¶16]  Faced with the task of interpreting similar statutes that fail to identify a scienter requirement with respect to the elements of a crime, the United States Supreme Court has relied on the presumption that some form of scienter is to be implied in a criminal statute even if not expressed.  The Court explained and applied this presumption in *X-Citement Video*.  In that case, the Court was called upon to determine whether 18 U.S.C. § 2252, prohibiting the distribution of child pornography, required a defendant to have knowledge of the fact that a "visual depiction" involved the use of a minor engaging in sexually explicit conduct.  The statute at that time provided:

> (a) Any person who --
>
>> (1) knowingly transports or ships in interstate or foreign commerce by any means including by computer or mails, any visual depiction, if --
>>
>>> (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
>>>
>>> (B) such visual depiction is of such conduct;
>>
>> (2) knowingly receives, or distributes, any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce or through the mails, if --
>>
>>> (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
>>>
>>> (B) such visual depiction is of such conduct;
>>> . . . .
>
> shall be punished as provided in subsection (b) of this section.

The specific issue addressed by the Court was whether the term "knowingly" in subsections (1) and (2) modified the phrase "the use of a minor" in subsections (1)(A) and (2)(A).  Despite the Court's conclusion that the most natural grammatical reading suggested that the term "knowingly" modified only the surrounding verbs, and not "the

elements of the minority of the performers, or the sexually explicit nature of the material," the Court held that the "knowingly" scienter requirement applied to the elements in subsection (1)(A) and (2)(A) as well, in part because of the presumption "that some form of scienter is to be implied in a criminal statute even if not expressed." *X-Citement Video*, 513 U.S. at 68-69, 115 S.Ct. at 467.

[¶17]  The Court succinctly summarized the precedent supporting this presumption:

> Our reluctance to simply follow the most grammatical reading of the statute is heightened by our cases interpreting criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them. The landmark opinion in *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), discussed the common-law history of *mens rea* as applied to the elements of the federal embezzlement statute. That statute read: "Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States . . . [s]hall be fined." 18 U.S.C. § 641, cited in *Morissette*, 342 U.S. at 248, n.2, 72 S.Ct. at 242, n.2. Perhaps even more obviously than in the statute presently before us, the word "knowingly" in its isolated position suggested that it only attached to the verb "converts," and required only that the defendant intentionally assume dominion over the property. But the Court used the background presumption of evil intent to conclude that the term "knowingly" also required that the defendant have knowledge of the facts that made the taking a conversion – *i.e.*, that the property belonged to the United States. *Id.*, at 271, 72 S.Ct. at 254. *See also United States v. United States Gypsum Co.*, 438 U.S. 422, 438, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978) ("[F]ar more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement").
>
> *Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), posed a challenge to a federal statute prohibiting certain actions with respect to food stamps. The statute's use of "knowingly" could be read only to modify "uses, transfers, acquires, alters, or possesses" or it could be read also to modify "in any manner not authorized by [the statute]." Noting that neither interpretation posed constitutional problems, *id.*, at 424, n.6, 105 S.Ct. at 2087,

n.6, the Court held the scienter requirement applied to both elements by invoking the background principle set forth in *Morissette*. In addition, the Court was concerned with the broader reading which would "criminalize a broad range of apparently innocent conduct." 471 U.S. at 426, 105 S.Ct. at 2088. Imposing criminal liability on an unwitting food stamp recipient who purchased groceries at a store that inflated its prices to such purchasers struck the Court as beyond the intended reach of the statute.

The same analysis drove the recent conclusion in *Staples v. United States*, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), that to be criminally liable a defendant must know that his weapon possessed automatic firing capability so as to make it a machinegun as defined by the National Firearms Act. Congress had not expressly imposed any *mens rea* requirement in the provision criminalizing the possession of a firearm in the absence of proper registration. 26 U.S.C. § 5861(d). The Court first rejected the argument that the statute described a public welfare offense, traditionally excepted from the background principle favoring scienter. *Morissette, supra*, at 255, 72 S.Ct. at 246. The Court then expressed concern with a statutory reading that would criminalize behavior that a defendant believed fell within "a long tradition of widespread lawful gun ownership by private individuals." *Staples*, 511 U.S. at 610, 114 S.Ct. at 1799. The Court also emphasized the harsh penalties attaching to violations of the statute as a "significant consideration in determining whether the statute should be construed as dispensing with *mens rea*." *Id.*, at 616, 114 S.Ct. at 1802.

*X-Citement Video*, 513 U.S. at 70-71, 115 S.Ct. at 468. Under this authority, the Court held that "*Morissette*, reinforced by *Staples*, instructs that the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct." *Id.*, 513 U.S. at 72, 115 S.Ct. at 469. Consistent with the analysis in *Staples*, the Court noted that the child pornography statute at issue did not describe a "public welfare offense," but rather was "more akin to the common-law offenses against the 'state, the person, property, or public morals,' *Morissette, supra*, at 255, that presume a scienter requirement in the absence of express contrary intent." *Id.*, 513 U.S. at 71-72, 115 S.Ct. at 468-69. Further, the court noted that "*Staples*' concern with harsh penalties looms equally large respecting § 2252: Violations are punishable by up to 10 years in prison as well as substantial fines and forfeiture." *Id.*, 513 U.S. at 72, 115 S.Ct. at 469. Both of these factors led the Court to conclude that "the term 'knowingly' in § 2252 extends both to the sexually explicit nature of the material and to

the age of the performers." *Id.*, 513 U.S. at 78, 115 S.Ct. at 472.

[¶18]  Similarly, our precedent has also interpreted Wyoming criminal statutes to require the defendant's knowledge of an attendant circumstance, even when that requirement is not explicitly applied to each of the elements of a particular statute.  For example, Wyo. Stat. Ann. § 6-5-204(a) defines the crime of interference with a peace officer:

> (a)   A person commits a misdemeanor punishable by imprisonment for not more than one (1) year, a fine of not more than one thousand dollars ($1,000.00), or both, if he knowingly obstructs, impedes or interferes with or resists arrest by a peace officer while engaged in the lawful performance of his official duties.

In considering this statute, we have indicated that a defendant must have knowledge that the person being obstructed or injured is a peace officer in order to be convicted of the crime of interference with a peace officer.  *Iseli v. State*, 2007 WY 102, ¶ 16, 160 P.3d 1133, 1138 (Wyo. 2007) (The defendant "could argue that he was not guilty because he did not know that Investigator Davis was a peace officer.").  Additionally, we have also found a knowledge requirement in crimes where the statute did not contain the word "knowingly."   In *Gallegos v. State*, 961 P.2d 981, 982 (Wyo. 1998), we reviewed a conviction under Wyo. Stat. Ann. § 35-7-1031 (Cum. Supp. 1995), which read, "[I]t is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance."  Although the statute did not include the word "knowingly," we confirmed that "knowledge that one is dealing with a controlled substance" is "required to constitute the completed crime."  *Id*. at 983, citing *Seymour v. State*, 949 P.2d 881, 883-84 (Wyo. 1997); *Dorador v. State,* 573 P.2d 839, 843 (Wyo. 1978).  We stated in *Dorador*, 573 P.2d at 843, that "Knowledge or scienter is essential to a general intent crime.  An accused must, of course, know that he is delivering a controlled substance."

[¶19]  While our precedent demonstrates a willingness to apply scienter requirements to the elements of a crime, even when not expressed in the language of a particular statute, we recognize that there are instances in which the legislature intends to impose criminal liability in absence of a finding of fault.  The historical origins of these "strict liability" crimes are explained in 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.5, at 381 (2d ed. 2003):

> For several centuries (at least since 1600) the different common law crimes have been so defined as to require, for guilt, that the defendant's acts or omissions be accompanied by one or more of the various types of fault (intention, knowledge, recklessness or – more rarely – negligence); a person is not guilty of a common law crime without one of

12

these kinds of fault. But legislatures, especially in the 20th and 21st centuries, have often undertaken to impose criminal liability for conduct unaccompanied by fault. A statute may simply provide that whoever does (or omits to do) so-and-so, or whoever brings about such-and such a result, is guilty of a crime, setting forth the punishment. Usually, but not always, the statutory crime-without-fault carries a relatively light penalty – generally of the misdemeanor variety. . . .

(Footnote omitted.) Professor LaFave suggests that "[a] number of factors may be considered of importance in deciding whether the legislature meant to impose liability without fault or, on the other hand, really meant to require fault, though it failed to spell it out clearly."[8] *Id.*, § 5.5(a), at 383. We will proceed to discuss those factors we find most

---

[8] LaFave suggests the following seven factors:

(1) The legislative history of the statute or its title or context may throw some light on the matter. (2) The legislature may have in some other statute provided guidance as to how a court is to determine whether strict liability was intended. (3) The severity of the punishment provided for the crime is of importance. Other things being equal, the greater the possible punishment, the more likely some fault is required; and, conversely, the lighter the possible punishment, the more likely the legislature meant to impose liability without fault. (4) The seriousness of harm to the public which may be expected to follow from the forbidden conduct is another factor. Other things being equal, the more serious the consequences to the public, the more likely the legislature meant to impose liability without regard to fault, and vice versa. (5) The defendant's opportunity to ascertain the true facts is yet another factor which may be important in determining whether the legislature really meant to impose liability on one who was without fault because he lacked knowledge of these facts. The harder to find out the truth, the more likely the legislature meant to require fault in not knowing; the easier to ascertain the truth, the more likely failure to know is no excuse. (6) The difficulty prosecuting officials would have in proving a mental state for this type of crime. The greater the difficulty, the more likely it is that the legislature intended to relieve the prosecution of that burden so that the law could be effectively enforced. (7) The number of prosecutions to be expected is another factor of some importance. The fewer the expected prosecutions, the more likely the legislature meant to require the prosecuting officials to go into the issue of fault; the greater the number of prosecutions, the more likely the legislature meant to impose liability without regard to fault. All the above factors have a bearing on the question of the interpretation of the empty statute, but no single factor can be said to be controlling. Thus some statutes have been held to impose liability without fault although the possible punishment was quite severe, generally because one or more the other factors

13

helpful in interpreting the statutes at issue in this case. In doing so, we recognize that, unlike the statute defining incest, the statute defining first degree sexual abuse of a minor, like the statutes at issue in *Gallegos* and *Staples*, does not contain the word "knowingly," or any other scienter requirement, such as purposely or recklessly. Nonetheless, as indicated above, we note that neither statute can be literally interpreted to require the defendant's knowledge of the necessary familial relationship. Accordingly, the question we must answer with respect to each statute is the same; that is, whether, in light of the following considerations, the defendant must know of the necessary familial relationship despite the legislature's failure to expressly identify that requirement.

[¶20] First, we find the most significant factor in interpreting the statutes at issue is the severity of the punishment provided for the crimes. As stated by LaFave, "Other things being equal, the greater the possible punishment, the more likely some fault is required." *Id.*, § 5.5(a), at 384. As indicated above, this principle was also expressed in *Staples*, 511 U.S. at 616-17, 114 S.Ct. at 1802-03:

> Historically, the penalty imposed under a statute has been a significant consideration in determining whether the statute should be construed as dispensing with *mens rea*. Certainly, the cases that first defined the concept of the public welfare offense almost uniformly involved statutes that provided for only light penalties such as fines or short jail sentences, not imprisonment in the state penitentiary.
>
> . . .
>
> As commentators have pointed out, the small penalties attached to such offenses logically complemented the absence of a *mens rea* requirement: In a system that generally requires a "vicious will" to establish a crime, 4 W. Blackstone, Commentaries * 21, imposing severe punishments for offenses that require no *mens rea* would seem incongruous.

The crimes of incest and first degree sexual abuse of a minor carry severe penalties. Incest is a felony punishable by up to fifteen years in prison and a fine of ten thousand dollars. Sexual abuse of a minor in the first degree is a felony with a minimum sentence of twenty-five years in prison, and a maximum penalty of fifty years. Because neither of

---

pointed toward strict liability.

1 Substantive Criminal Law § 5.5(a), at 383-86 (footnotes omitted).

these potential punishments constitutes "a relatively light penalty," the discussions in *Staples* and LaFave suggest that they should not be considered crimes-without-fault, but rather should include an element of fault or scienter with respect to the necessary familial relationship.

[¶21] A similar consideration relating to the severity of the penalties prescribed for incest and first degree sexual abuse of a minor leads us to conclude that the legislature considered the familial relationship a significant element of these crimes. Absent the family relationship element in the crime of incest, an actor's sexual relationship with another willing adult participant is not a felony punishable by up to fifteen years in prison, but rather constitutes a sexual relationship between consenting adults, free from threat of criminal punishment. Likewise, in the absence of a familial relationship, Mr. Bowlsby's conduct in the present case would not have violated Wyoming's sexual abuse statutes, none of which make it a crime for a thirty-five-year-old to have a consenting sexual relationship with a seventeen-year-old.[9] Accordingly, under both the incest and the first degree sexual abuse statutes, the existence of a family relationship establishes the difference between innocent conduct and a crime punishable by up to fifty years in prison. As a result, an interpretation of these statutes which dispenses with the requirement that the defendant have knowledge of the family relationship has the potential to "criminalize a broad range of apparently innocent conduct." *Liparota*, 471 U.S. at 426, 105 S.Ct. at 2088.

[¶22] Second, LaFave notes that "The legislature may have in some other statute provided guidance as to how a court is to determine whether strict liability was intended." LaFave, § 5.5(a), at 383. While a number of modern criminal codes have provided that a statute should not be interpreted to create a strict liability offense unless it "clearly indicates" or "plainly appears" that such a result was intended by the legislature, courts have also found guidance from statutes setting forth an "affirmative defense" with respect to a particular element of the crime. *Id.* at 383-84 n.11; *see, e.g., State v. Buttrey*, 293 Ore. 575, 651 P.2d 1075 (1982). Our legislature has enacted a number of statutes

---

[9] Prior to its repeal in 2007, Wyo. Stat. Ann. § 14-3-105 (LexisNexis 2005) provided:

> (a) . . . [A]ny person knowingly taking immodest, immoral or indecent liberties with any child or knowingly causing or encouraging any child to cause or encourage another child to commit with him any immoral or indecent act is guilty of a felony. Except as provided by subsection (b) of this section, a person convicted under this section shall be fined not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) or imprisoned in the penitentiary not more than ten (10) years, or both. . . .
>
> (c) As used in this section, "child" means a person under the age of eighteen (18) years.

15

establishing such affirmative defenses. For example, Wyo. Stat. Ann. § 6-2-308 provides that, under certain circumstances, "it is an affirmative defense" to the charge of sexual abuse of a minor in the first degree if the defendant "reasonably believed that the victim was sixteen (16) years of age or older":

> (a) Except as provided by subsection (b) of this section, if criminality of conduct in this article depends on a victim being under sixteen (16) years of age, it is an affirmative defense that the actor reasonably believed that the victim was sixteen (16) years of age or older.
>
> (b) If criminality of conduct in this article depends upon a victim being under twelve (12) years or under fourteen (14) years, it is no defense that the actor did not know the victim's age, or that he reasonably believed that the victim was twelve (12) years or fourteen (14) years of age or older, as applicable.

Because this is an affirmative defense, the defendant has the burden of producing evidence to support it, and the prosecution then generally has the "burden to negate this defense beyond a reasonable doubt." *Olsen v. State*, 2003 WY 46, ¶ 144 n.12, 67 P.3d 536, 589 n.12 (Wyo. 2003); *Duckett v. State*, 966 P.2d 941, 948 (Wyo. 1998); *Brooks v. State*, 706 P.2d 664, 667 (Wyo. 1985). However, if the defendant does not produce evidence to support this affirmative defense, the prosecution is not required to prove the defendant's knowledge of the victim's age. If defendant's knowledge of the victim's age does not have to be proven in every case, it is not an element of the crime.

[¶23] There is no statute establishing lack of knowledge of the victim's familial relationship as an affirmative defense to either incest or first degree sexual abuse of a minor. The legislature clearly knew how to specify that reasonable belief as to a victim's age was an affirmative defense. The fact that it did not provide similar treatment to knowledge of a victim's familial relationship indicates that lack of knowledge of the family relationship should not be interpreted as an affirmative defense. *See Royal v. Walsh*, 2004 WY 96, ¶ 15, 96 P.3d 1, 5 (Wyo. 2004). If lack of knowledge is not a defense, then it is more likely that the legislature intended that such knowledge was an element of the crimes of incest and sexual abuse of a minor in the first degree.

[¶24] The third and final factor relevant to our analysis is the difficulty that the prosecution would have in proving the mental state with respect to the crime: "The greater the difficulty, the more likely it is that the legislature intended to relieve the prosecution of that burden so that the law could be effectively enforced." LaFave, § 5.5(a), at 386. We think that, as in Mr. Bowlsby's case, it should not be difficult for the prosecution to prove knowledge of familial relationship in the vast majority of prosecutions for incest and sexual abuse of a minor in the first degree. It seems unlikely

that the legislature intended to relieve the prosecution of this relatively uncomplicated burden in light of the severe penalty associated with each of these crimes.

[¶25] In summary, our analysis has started with the proposition that the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct unless the legislature has clearly indicated its intent to abandon a mental element and impose strict liability. Our review of the relevant statutes has found no such intent. Rather, we have found several significant factors that indicate that the legislature did not intend to impose strict liability. First, we must note that the crimes of incest and first degree sexual abuse of a minor do not fall within the category of "public welfare offenses" that are traditionally excepted from the presumption in favor of a scienter requirement. Further, the severity of the potential punishments for incest and first degree sexual abuse of a minor, the fact that the legislature has chosen not to establish lack of knowledge of the familial relationship as an affirmative defense to either crime, and the relative ease of proving this knowledge in the majority of cases involving these crimes suggest that the legislature did not intend to impose criminal liability without regard to whether the defendant knew that the victim was related to him. Ultimately, we conclude that the significance of the familial relationship to the crimes of incest and first degree sexual abuse of a minor cannot be overstated, and that the statutes cannot be reasonably interpreted to dispense with the requirement that the defendant have knowledge of that relationship. Absent a clear indication from the legislature, we cannot sustain an interpretation of the incest and sexual abuse statutes that would criminalize, under threat of severe penalty, otherwise innocent conduct.

[¶26] As a result, we hold that the elements of sexual abuse of a minor in the first degree, as defined by Wyo. Stat. Ann. § 6-2-314(a)(ii), are as follows: the defendant, (1) being eighteen years of age or older; (2) inflicts sexual intrusion; (3) on a victim who is less than eighteen years of age; (4) the defendant is the victim's legal guardian or an individual specified in Wyo. Stat. Ann. § 6-4-402, and (5) the defendant knows of his familial relationship with the victim. In comparison, the elements of the crime of incest are that the defendant: (1) commits sexual intrusion or sexual contact; (2) with a person of the specified familial relationship; (3) and knows of his familial relationship with the victim. From these two lists, it is apparent that the elements of incest are a subset of the elements of sexual abuse of a minor in the first degree.[10] Stated another way, Wyoming's incest statute does not require proof of any fact which is not also necessary to a conviction for first degree sexual abuse of a minor under Wyo. Stat. Ann. § 6-2-

_____

[10] Wyoming Criminal Pattern Jury Instructions 44.02A and 23.14C, which purport to set forth the elements of incest and first degree sexual abuse of a minor, respectively, do not contain any mental element with respect to those crimes. Under our decision in this case, the pattern jury instructions are inadequate in their failure to specify that the defendant must have knowledge of the necessary familial relationship.

17

314(a)(ii). Incest is a lesser included offense of sexual abuse of a minor in the first degree and constitutes the "same offense" under a double jeopardy analysis. Consequently, the issuance of multiple punishments for the same offense violated Mr. Bowlsby's constitutional double jeopardy protections.

[¶27] Having concluded that the crime of incest is a lesser included offense of first degree sexual abuse of a minor as charged in this case, we must determine an appropriate remedy. Because Mr. Bowlsby's conviction and sentence for incest violates his constitutional double jeopardy protections, that conviction and sentence must be set aside. That is the only relief sought by Mr. Bowlsby. The problem, of course, is that this matter comes to us following guilty pleas pursuant to a plea bargain. The plea bargain contemplated conviction and sentences on two counts. As a result of our decision, Mr. Bowlsby will only have one conviction and sentence. In return for Mr. Bowlsby's plea, the State dismissed seven other felony counts. Mr. Bowlsby has received the benefit of the bargain, but it appears that the State has not. We have previously recognized that "A plea agreement is a contract between the State and a defendant. As such, both parties must adhere to the terms of the contract, and each party is entitled to the benefit of the bargain entered." *Ford v. State*, 2003 WY 65, ¶ 10, 69 P.3d 407, 410 (Wyo. 2003).

[¶28] Although we reverse Mr. Bowlsby's conviction and sentence for incest, we remand for further proceedings relating to the plea agreement and the conviction for first degree sexual abuse of a minor. On remand, the State shall advise the district court whether it wishes to void the plea agreement in light of this decision. If the State wishes to do so, the district court shall hold further proceedings to determine if grounds exist to void the agreement. If the State does not wish to void the plea agreement, the sentence on first degree sexual abuse of a minor shall remain in full force and effect.

[¶29] We reverse Mr. Bowlsby's conviction and sentence for the crime of incest and remand for further proceedings in accordance with this opinion.

18