# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 41

OCTOBER TERM, A.D. 2015

*April 1, 2016*

RICHARD J. REDDING,

Appellant
(Defendant),

v.                                          S-15-0205

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Converse County*
*The Honorable John C. Brooks, Judge*

*Representing Appellant:*

Office of the State Public Defender:  Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; and Patricia L. Bennett, Sr. Assistant Appellate Counsel.  Argument by Ms. Bennett.

*Representing Appellee:*

Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; and Kelly M. Shaw, Assistant Attorney General.  Argument by Ms. Shaw.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]   Richard Redding was charged with felony interference with a peace officer after having pled guilty to a misdemeanor charge arising out of the same events. The district court denied Mr. Redding's motion to dismiss the felony charge on double jeopardy grounds, and Mr. Redding thereafter entered an unconditional plea of no contest to a reduced charge of misdemeanor interference. On appeal, Mr. Redding contends his second misdemeanor conviction violated the double jeopardy provisions of the Wyoming and United States constitutions. We affirm.

## ISSUE

[¶2]   Mr. Redding presents a single issue for our review and states that issue as follows:

> I.   The prosecution of Mr. Redding for felony interference with a peace officer after Mr. Redding had plead[ed] guilty to misdemeanor interference with a peace officer violated the double jeopardy clauses of the United States and Wyoming constitutions.[1]

[¶3]   The State responds with a similarly stated issue and the following additional issue:

> I.   A defendant who pleads guilty or no contest waives all nonjurisdictional defenses to the charges against him. A defendant can preserve nonjurisdictional defenses for appeal only by entering a conditional guilty plea. Richard J. Redding unconditionally pleaded no contest to the charge of interference with a peace officer. Is the defense of double jeopardy a nonjurisdictional defense that Redding waived when he unconditionally pleaded no contest?

## FACTS

[¶4]   On the evening of December 26, 2014, Mr. Redding was intoxicated and arguing with his wife. In an effort to calm himself and prevent the dispute with his wife from escalating, he called law enforcement. Officers Ableman and Coates of the Douglas, Wyoming Police Department responded to the call. Mr. Redding told the officers his wife had been yelling at him and causing problems, and he asked that the officers remove

---

[1] Although Mr. Redding invokes both the Wyoming and the United States constitutions in making his double jeopardy claim, he provides no independent state constitutional analysis, and we have held that our state protections are equivalent to the federal protections. *Bowlsby v. State*, 2013 WY 72, ¶ 8, 302 P.3d 913, 916 (Wyo. 2013). For all intents and purposes then, we are presented with a double jeopardy claim that is governed by federal principles.

her from the home. When Officer Ableman told Mr. Redding the officers could not make his wife leave the home, Mr. Redding became angry and argumentative. Officer Ableman advised Mr. Redding again that they had no grounds to remove anyone from the home and told him that he and his wife needed to leave each other alone, stay away from each other, and try to be civil, especially in front of their children.

[¶5] The officers left the home and were standing in front of the home when Mr. Redding came outside and started yelling profanities at them. The officers told Mr. Redding to stop yelling profanities and go back inside. Mr. Redding continued yelling profanities, and the officers again told him to stop yelling the profanities outside. When Mr. Redding started yelling a third time, the officers approached him and told him he was under arrest. Mr. Redding held the gate latch down so the officers could not open the gate, and Officer Ableman jumped the fence. Mr. Redding then ran back into his home.

[¶6] Inside the home, Mr. Redding got behind his wife and told her not to let the officers take him to jail. When officers approached Mr. Redding, Officer Coates grabbed Mr. Redding's left arm and told him to put his hands behind his back. Mr. Redding refused, and Officer Ableman then reached for Mr. Redding's right arm, telling him to place his hands behind his back. Mr. Redding again refused, and the officers had to wrestle him for a few minutes before they were able to gain control of him and place him under arrest. At this point, the officers removed Mr. Redding from the home without first handcuffing him because his right hand was wrapped and he had told officers it was broken.

[¶7] Once outside, the officers walked Mr. Redding away from the home. When they reached the gate, Mr. Redding stated, "I'm not going," and he tried to grab the gate. Officer Ableman restrained Mr. Redding's arm so he could not grab the gate, and Mr. Redding jerked his arm, elbowing Officer Ableman in the jaw. Officer Ableman handcuffed Mr. Redding's left arm to a belt loop on the back of his jeans, and the officers then transported him to county jail.

[¶8] The arresting officers issued Mr. Redding two citations, one for misdemeanor breach of peace and one for misdemeanor interference with a peace officer. On December 29, 2014, Mr. Redding appeared in circuit court and pled guilty to both charges. The circuit court accepted the guilty pleas and sentenced Mr. Redding to a three-day jail sentence for the breach of peace conviction, with credit for three days served, and to a thirty-day sentence for the interference conviction, with credit for three days served and the remainder suspended on condition of a one-year unsupervised probation.

[¶9] Two days later, on December 31, 2014, the State filed an information charging Mr. Redding with felony interference with a peace officer in violation of Wyo. Stat. Ann. § 6-5-204(b). The information alleged that Mr. Redding intentionally and knowingly

caused bodily injury to a peace officer engaged in his official duties by "elbowing Douglas Police Officer Michael Ableman on the right side of his chin while Officer Ableman was attempting to arrest the defendant for Breach of the Peace." Attached to the information was a probable cause affidavit that described the events that occurred both inside and outside the Redding home on December 26, 2014.

[¶10] On January 15, 2015, the circuit court issued an order binding Mr. Redding over to district court on the felony interference charge, and on February 5, 2015, Mr. Redding filed a motion to dismiss the felony charge, claiming it violated the double jeopardy protections of the Fifth Amendment to the United States Constitution. On March 6, 2015, the district court issued an order denying Mr. Redding's motion to dismiss. The court reasoned:

> The factual scenario involved in this case was multifold. First, there was a confrontation outside the residence involving both officers. Then there was a scuffle indoors involving both officers. Finally, there was a second incident outdoors when the Defendant elbowed officer Ableman. The resisting arrest occurred up to the time the Defendant was restrained in the house. He was clearly under arrest after the officers removed him from the residence. It was then that the elbowing action occurred, but only against officer Ableman. Thus, like *Pope* [*v. State*, 2002 WY 9, 38 P.3d 1069 (Wyo. 2002),] there was a separate act by the Defendant against only one policeman. There must be proof of a separate fact, that being bodily injury, to establish an element separate from the misdemeanor. That element was not established or pled guilty to in Circuit Court.
> Thus the Defendant is not placed in double jeopardy by virtue of the felony charge. The Defendant's motion is denied.

[¶11] On July 6, 2015, Mr. Redding entered an unconditional no contest plea to a reduced charge of misdemeanor interference. Defense counsel informed the district court that because of the double jeopardy question, the parties had agreed on a no contest plea and the prosecutor had elected to lay the factual basis for the plea. The prosecutor agreed with defense counsel's representation and then outlined the factual basis for Mr. Redding's plea.

[¶12] The district court accepted Mr. Redding's no contest plea to the charge of misdemeanor interference and sentenced him to a term of six months in jail suspended in favor of one year of supervised probation, to be served concurrently with the probation

Mr. Redding was already serving. On July 10, 2015, the court issued its Judgment, Sentence and Order, and Mr. Redding thereafter timely filed his appeal to this Court.

## STANDARD OF REVIEW

[¶13] This Court "reviews *de novo* the question of whether a defendant's constitutional protection against double jeopardy has been violated." *Sweets v. State*, 2013 WY 98, ¶ 19, 307 P.3d 860, 867 (Wyo. 2013) (quoting *James v. State*, 2012 WY 35, ¶ 9, 271 P.3d 1016, 1018 (Wyo. 2012)). The State's assertion that Mr. Redding's entry of an unconditional no contest plea waived his double jeopardy defense also presents a question of law that we review *de novo*. *See Henry v. State*, 2015 WY 156, ¶ 13, 362 P.3d 785, 789 (Wyo. 2015) (reviewing *de novo* the question of whether defendant waived appeal of firearms advisement by entering into plea agreement).

## DISCUSSION

### I. Waiver of Double Jeopardy Defense

[¶14] "A guilty plea waives all non-jurisdictional defenses." *Bowlsby v. State*, 2013 WY 72, ¶ 5, 302 P.3d 913 at 915 (Wyo. 2013). The effect of a no contest plea is the same. *Hagen v. State*, 2014 WY 141, ¶ 9, 336 P.3d 1219, 1222 (Wyo. 2014) ("A *nolo contendere* plea waives all issues but those related to jurisdiction and voluntariness of the plea."). We have held, however, that because a double jeopardy claim implicates the government's power to bring a defendant into court on a charge, the issue of double jeopardy is jurisdictional and may be raised at any time. *Snow v. State*, 2009 WY 117, ¶ 13, 216 P.3d 505, 509 (Wyo. 2009) (citing *Taylor v. State*, 2003 WY 97, ¶ 11, 74 P.3d 1236, 1239 (Wyo. 2003)).

[¶15] The State acknowledges our holdings concerning the jurisdictional nature of a double jeopardy claim. It asserts, however, that in *United States v. Broce*, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), the Supreme Court clarified that not all double jeopardy claims are jurisdictional and in certain circumstances a guilty plea will waive a double jeopardy claim. It contends those circumstances exist in this case and that under the *Broce* analysis, Mr. Redding's double jeopardy claim is non-jurisdictional and was waived when he entered his no contest plea.

[¶16] We have recognized that a distinction exists between jurisdictional and non-jurisdictional double jeopardy claims, but we have not previously addressed the distinction. *See Bowlsby*, ¶ 5, 302 P.3d at 915 n.1 (noting possible jurisdictional distinction but not addressing it because State did not raise waiver question); *Snow*, ¶ 13, 216 P.3d at 509 n.6 (same); *Longstreth v. State*, 890 P.2d 551, 552-53 (Wyo. 1995) (*Broce* ruling raised by defendant but not addressed). Because the State has raised the

4

waiver question in response to Mr. Redding's appeal, we take this opportunity to address the distinction.

## A.    *United States v. Broce*

[¶17] Our first task in considering the waiver question is to determine the rule that emerged from the Supreme Court's holding in *Broce*.  This requires a close examination of the facts and the Court's reasoning in that decision.

[¶18]  *Broce* arose out of indictments relating to numerous allegations of bid rigging on highway projects in Kansas.  *Broce*, 488 U.S. at 565-67, 109 S.Ct. at 760-61.  The first defendants indicted in the bid rigging schemes were Ray Broce and his incorporated construction company.  *Id*.  The Supreme Court described the indictments and ensuing guilty pleas:

> Respondents, Ray C. Broce and Broce Construction Co., Inc., bid for work on highway projects in Kansas. Two of the contracts awarded to them became the subject of separate indictments charging concerted acts to rig bids and suppress competition in violation of the Sherman Act, 26 Stat. 209, as amended, 15 U.S.C. § 1. * * * The first indictment charged respondents with entering into an agreement, sometime in or about April 1978, to rig bids on a particular highway project. The second charged respondents with entering into a similar agreement, sometime in or about July 1979, to rig bids on a different project. Both indictments were discussed during plea negotiations, and respondents acknowledged in plea agreements that they were subject to separate sentences on each conspiracy charged.
>
> Respondents pleaded guilty to the two indictments in a single proceeding. The District Court conducted a hearing fully in accord with Rule 11 of the Federal Rules of Criminal Procedure and found that the pleas were free and voluntary, made with an understanding of their consequences and of the nature of the charges.  Respondents had counsel at all stages and there are no allegations that counsel was ineffective. Convictions were entered on the pleas.  The District Court then sentenced Broce to two years' imprisonment on each count, the terms to run concurrently, and to a fine of $50,000 on each count. Broce was also sentenced for mail fraud under 18 U.S.C. § 1341, a conviction which is not relevant here. The corporation was fined $750,000 on each count, for a total

5

of $1,500,000. Neither respondent having appealed, the judgments became final.

*Broce*, 488 U.S. at 565-66, 109 S.Ct. at 760 (citations to record omitted).

[¶19] On the same day the *Broce* defendants entered their guilty pleas, an indictment was issued against Robert Beachner and his construction company, alleging the same type of bid-rigging conspiracy on a single Kansas highway project. *Broce*, 488 U.S. at 566, 109 S.Ct. at 760-61. The Beachner defendants did not plead guilty and instead went to trial and were acquitted. *Id.*, 488 U.S. at 566, 109 S.Ct. at 761. Following the Beachner aquittal, a second indictment was returned against the Beachner defendants charging them with bid-rigging conspiracies on three Kansas highway projects not covered in the first indictment. *Id.* The Beachner defendants moved to dismiss the indictment on double jeopardy grounds, arguing that the bid-rigging arrangements were merely smaller parts of one overarching conspiracy existing among Kansas highway contractors and its acquittal on the first charge precluded the subsequent charges. *Id.*, 488 U.S. at 566-67, 109 S.Ct. at 761. The district court agreed and dismissed the indictment, and that dismissal was upheld on appeal. *Id.*

[¶20] The Supreme Court described the response of the *Broce* defendants to the dismissal of the second Beachner indictment:

> One might surmise that the *Broce* defendants watched the *Beachner* proceedings with awe, if not envy. What is certain is that the *Broce* defendants sought to profit from Beachner's success. After the District Court issued its decision to dismiss in *Beachner II,* the *Broce* respondents filed a motion pursuant to Federal Rule of Criminal Procedure 35(a) to vacate their own sentences on the Sherman Act charge contained in the second indictment. Relying on *Beachner II,* they argued that the bid-rigging schemes alleged in their indictments were but a single conspiracy.

*Broce*, 488 U.S. at 567, 109 S.Ct. at 761.

[¶21] The district court initially denied the *Broce* defendants' motion to vacate their sentences on the second indictment, but on remand from the Tenth Circuit Court of Appeals, it granted the motion. *Broce*, 488 U.S. at 567-69, 109 S.Ct. at 761-62. The Supreme Court reversed. *Id.*, 488 U.S. at 576, 109 S.Ct. at 766. In so ruling, the Supreme Court began its analysis with the following statement of the general rule concerning the effect of a guilty plea:

6

A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack. ***There are exceptions where on the face of the record the court had no power to enter the conviction or impose the sentence.***

*Broce*, 488 U.S. at 569, 109 S.Ct. at 762 (emphasis added).

[¶22] The exceptions to which the Court referred were drawn from the Court's prior decisions, and the Court explained those exceptions and their application as follows:

An exception to the rule barring collateral attack on a guilty plea was established by our decisions in *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), and *Menna v. New York, supra,* but it has no application to the case at bar.

The respondent in *Blackledge* had been charged in North Carolina with the state-law misdemeanor of assault with a deadly weapon. Pursuant to state procedures, he was tried in the county District Court without a jury, but was permitted, once he was convicted, to appeal to the county Superior Court and obtain a trial *de novo.* After the defendant filed an appeal, the prosecutor obtained an indictment charging felony assault with a deadly weapon with intent to kill and inflict serious bodily injury. The defendant pleaded guilty. We held that the potential for prosecutorial vindictiveness against those who seek to exercise their right to appeal raised sufficiently serious due process concerns to require a rule forbidding the State to bring more serious charges against defendants in that position. The plea of guilty did not foreclose a subsequent challenge because in *Blackledge,* unlike in *Brady* and *Tollett,* the defendant's right was "the right not to be haled into court at all upon the felony charge. The very initiation of proceedings against him ... thus operated to deny him due process of law." 417 U.S., at 30-31, 94 S.Ct., at 2104.

The petitioner in *Menna* had refused, after a grant of immunity, to obey a court order to testify before a grand jury. He was adjudicated in contempt of court and sentenced to a term in civil jail. After he was released, he was indicted for the same refusal to answer the questions. He pleaded guilty and was sentenced, but then appealed on double jeopardy grounds. The New York Court of Appeals concluded that Menna had waived his double jeopardy claim by pleading guilty. We reversed, citing *Blackledge* for the proposition that "[w]here the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty." 423 U.S., at 62, 96 S.Ct., at 242. We added, however, an important qualification:

> "We do not hold that a double jeopardy claim may never be waived. We simply hold that a plea of guilty to a charge does not waive a claim that-*judged on its face*-the charge is one which the State may not constitutionally prosecute." *Id.*, at 63, n.2, 96 S.Ct., at 242, n. 2 (emphasis added).

In neither *Blackledge* nor *Menna* did the defendants seek further proceedings at which to expand the record with new evidence. ***In those cases, the determination that the second indictment could not go forward should have been made by the presiding judge at the time the plea was entered on the basis of the existing record.*** Both *Blackledge* and *Menna* could be (and ultimately were) resolved without any need to venture beyond that record. In *Blackledge,* the concessions implicit in the defendant's guilty plea were simply irrelevant, because the constitutional infirmity in the proceedings lay in the State's power to bring any indictment at all. In *Menna,* the indictment was facially duplicative of the earlier offense of which the defendant had been convicted and sentenced so that the admissions made by Menna's guilty plea could not conceivably be construed to extend beyond a redundant confession to the earlier offense.

*Broce,* 488 U.S. at 574-76, 109 S.Ct. at 765-66 (emphasis added).

8

[¶23] Applying this analysis to the case before it, the Supreme Court found that the *Broce* indictments facially described separate conspiracies and that the record as it existed when the defendants entered their guilty pleas contained no evidence or information to contradict those indictments. *Broce*, 488 U.S. at 576, 109 S.Ct. at 766. This meant the double jeopardy violation was not apparent on the face of the indictments or in the existing record, and there was, in contrast to the *Menna* claim, no facial basis on which the court that accepted the guilty pleas should have made a determination that the second indictment could not go forward. *Id.*, 488 U.S. at 575-76, 109 S.Ct. at 765-66. For this reason, the Court concluded the defendants had waived their double jeopardy claim with the entry of their guilty pleas. *Id.*, 488 U.S. at 576, 109 S.Ct. at 766.

[¶24] We interpret *Broce* as essentially holding that a double jeopardy claim is jurisdictional and will not be deemed waived if the court accepting the defendant's guilty plea had before it a record sufficient to demonstrate that the guilty plea would result in a double jeopardy violation. What this means for our review on appeal was put into practical terms by the Wisconsin Supreme Court, and we agree with that Court's approach:

> The Supreme Court in *Broce* did not conclude that a guilty plea waives the right to raise a double jeopardy challenge. Rather, the Court held that a guilty plea *waives the right to a fact-finding hearing* on a double jeopardy challenge. *Broce*, 488 U.S. at 573, 109 S.Ct. 757. Thus, "a plea of guilty to a charge does not waive a claim that-*judged on its face*-the charge is one which the State may not constitutionally prosecute." *Id*. at 575, 109 S.Ct. 757 (quoting *Menna*, 423 U.S. at 63 n. 2, 96 S.Ct. 241). ***What this means is that a court will consider the merits of a defendant's double jeopardy challenge <u>if</u> it can be resolved on the record as it existed at the time the defendant pled***.

*State v. Kelty*, 2006 WI 101, ¶ 38, 716 N.W.2d 886, 897 (Wis. 2006) (footnote omitted) (emphasis added).

[¶25] Our reading of *Broce* is not the interpretation urged by the State. The State contends that per *Broce*, an unconditional guilty plea waives a defendant's double jeopardy claim unless the double jeopardy violation is apparent on the face of the charging documents. In the State's view, a defendant must prove a double jeopardy violation based solely on the charging documents and if that cannot be done, the double jeopardy claim is waived by the defendant's guilty plea. Emphasizing this view, the State argued in its briefing (citation omitted):

9

The United States Supreme Court does not require the State to present detailed charges in its indictments. Redding could have demanded more detail from the State and preserved his right to assert double jeopardy as a defense by pleading conditionally or by declining to plead and proceeding to trial.

[¶26] We reject the State's view that a defendant is confined to the charging documents in proving that a double jeopardy violation was apparent when he entered his guilty plea. The Supreme Court itself in *Broce* announced no such rule and in barring the defendants' double jeopardy claim observed that the defendants' claim failed because they could not "prove their claim by relying on [the] indictments *and the existing record*." *Broce*, 488 U.S. at 576, 109 S.Ct. at 766 (emphasis added). Under the *Broce* analysis it was not the existing record that was off limits in determining the double jeopardy claim. Rather, it was the notion of venturing beyond that record and allowing an evidentiary hearing to prove the claim that troubled the Court:

> Respondents had the opportunity, instead of entering their guilty pleas, to challenge the theory of the indictments and to attempt to show the existence of only one conspiracy in a trial-type proceeding. They chose not to, and hence relinquished that entitlement.

*Broce*, 488 U.S. at 571, 109 S.Ct. at 763.

[¶27] We are satisfied that the rule that emerged from *Broce* was much as the Wisconsin Supreme Court summarized it: A reviewing court may consider the merits of a defendant's double jeopardy challenge following entry of an unconditional guilty or no contest plea if the claim can be resolved on the basis of the charging documents and/or the record as it existed at the time the defendant pled.[2] If resolution of the claim requires evidence outside the existing record, the claim shall be deemed waived by the guilty or no contest plea.[3]

---

[2] We also agree with the Wisconsin court's observation that "[b]ecause pleas may be entered at different stages of a criminal proceeding, 'the record' as it existed at the time of the plea will vary from case to case." *Kelty*, ¶ 38, 716 N.W.2d at 897 n.15.

[3] This approach finds support in the federal courts of appeal. The circuit courts applying *Broce* to determine whether a defendant's double jeopardy claim survived his guilty plea have unanimously approached the question as one requiring review of both the indictments and the record that existed at the time of a defendant's guilty plea, and they have excluded from consideration only the evidence outside that record. *See United States v. Adame-Hernandez*, 763 F.3d 818, 829 (7th Cir. 2014) (defendant may not seek further proceedings to expand record and double jeopardy violation must be apparent on the basis of existing record when second plea was entered); *Lemke v. Ryan*, 719 F.3d 1093, 1097 (9th Cir. 2013) (double jeopardy claim reviewable where claim can be resolved without venturing beyond existing record); *United States v. Stefanidakis*, 678 F.3d 96, 99-100 (1st Cir. 2012) (defendant may not in pursuing double jeopardy claim revisit factual predicate of conviction or venture outside record); *United States v.*

## B. Adoption of the *Broce* Rule

[¶28] Our next task is to determine whether the *Broce* rule is the analysis we wish to adopt in our jurisdiction for review of double jeopardy claims following entry of an unconditional guilty or no contest plea. We take this step because, although Mr. Redding's double jeopardy claim is essentially a federal claim, *Broce* speaks to the federal remedy available for a double jeopardy claim following a guilty plea, and we are not necessarily limited to that remedy. As one state court explained in rejecting the *Broce* analysis:

> The rule of relinquishment articulated in *Broce* is not constitutional in nature but is a procedural bar under Federal common law, which does not govern State procedural law. See *Commonwealth v. LePage*, 352 Mass. 403, 409, 226 N.E.2d 200 (1967) ("Federal rules and cases ... do not control Massachusetts procedures, so long as there is no violation of applicable Federal constitutional principles"). See also *Lefkowitz v. Newsome*, 420 U.S. 283, 288–292, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975) (applying State law to determine whether guilty plea constituted waiver of constitutional claims). Where we have declared as a matter of State procedural common law that a guilty plea does not relinquish a defendant's entitlement to challenge a conviction on double jeopardy grounds, see *Commonwealth v. Clark*, *supra*, a Federal rule of relinquishment has no consequence to collateral review of a guilty plea in a Massachusetts court and

---

*Ehle*, 640 F.3d 689, 693 (6th Cir. 2011) (no waiver of double jeopardy claim where violation apparent from face of indictment and record existing when plea entered); *United States v. Calhoun*, 450 Fed. Appx. 74, 75-76 (2nd Cir. 2011) (defendant cannot complain of double jeopardy violation unless it is apparent from face of indictment or record existing at time of plea); *United States v. Bonilla*, 579 F.3d 1233, 1241 (11th Cir. 2009) (court will look to the record that existed at time of guilty plea to determine double jeopardy waiver); *United States v. Brown*, 155 F.3d 431, 434 (4th Cir. 1998) (court will look to indictments and record evidence at time of plea to determine double jeopardy waiver); *Walker v. United States*, 115 F.3d 603, 604 (8th Cir. 1997) (court will look to face of record to determine whether guilty plea forecloses attack on conviction); *United States v. Smith*, 81 F.3d 1147, *1 (D.C. Cir. 1996) ("[Defendant's] double jeopardy claim fails because any such defense would require evidence outside the record and, thus, was waived by his guilty plea."); *Thomas v. Kerby*, 44 F.3d 884, 888 (10th Cir. 1995) (double jeopardy claim not waived if apparent on face of indictment and/or record existing at time of plea); *United States v. Pollen*, 978 F.2d 78, 84 (3rd Cir. 1992) (no double jeopardy waiver if violation apparent from face of indictment or record); *Taylor v. Whitley*, 933 F.2d 325, 328 (5th Cir. 1991) (Defendant "may succeed on his double jeopardy claim only if the violation is apparent on the face of the indictment or record.").

11

may not override our declaration of a different procedural rule.

*Commonwealth v. Negron*, 967 N.E.2d 99, 102-03 (Mass. 2012); *see also Kelty*, ¶ 27, 716 N.W.2d at 894 (citing *Lefkowitz v. Newsome*, 420 U.S. 283, 288, 293, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975)) (Because *Broce* explains the effect of guilty pleas in the federal criminal justice system, it is not binding precedent on this court)); *Danforth v. Minnesota*, 552 U.S. 264, 288, 128 S.Ct. 1029, 1045-46, 169 L.Ed.2d 859 (2008)) (quoting *American Trucking Assns., Inc. v. Smith*, 496 U.S. 167, 178-79, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) ("[T]he remedy a state court chooses to provide its citizens for violations of the Federal Constitution is primarily a question of state law. Federal law simply 'sets certain minimum requirements that States must meet but may exceed in providing appropriate relief.'").

[¶29]   Although we are not bound by the *Broce* waiver analysis, it has generally been this Court's approach to treat United States Supreme Court interpretations as dispositive of federal constitutional claims raised in our courts, unless we have an independent state ground for ruling otherwise. *Bear Cloud v. State*, 2014 WY 113, ¶ 38, 334 P.3d 132, 144 (Wyo. 2014) (citing *Nehring v. Russell*, 582 P.2d 67, 74 (Wyo. 1978)). In this case, we have no such basis to deviate from the federally prescribed remedy. *See Sweets*, ¶ 49, 307 P.3d at 875 (aligning our double jeopardy analysis with federal precedent); *Bowlsby*, ¶ 8, 302 P.3d at 916 ("We have held that the state and federal [double jeopardy] provisions are equivalent."). Additionally, we again agree with the Wisconsin Supreme Court that the *Broce* analysis "properly balances the public's interest in efficient judicial administration with a defendant's double jeopardy rights." *Kelty*, ¶ 27, 716 N.W.2d at 894. As that court observed:

> * * * *Broce* ensures adequate protection for the double jeopardy rights of defendants. Defendants may present a double jeopardy challenge if the issue can be resolved on the record, as recognized in *Broce*. Only the class of double jeopardy defects that cannot be resolved on the record will escape substantive review. This result logically follows from the nature of a guilty plea. Where doubts about the presence of a double jeopardy violation exist, these doubts should be treated no differently than other factual and legal uncertainties, which are also resolved by a guilty plea. Just as a defendant does not know whether the state will be able to prove the factual predicates necessary to establish guilt beyond a reasonable doubt, a defendant does not know whether she will succeed on a double jeopardy claim that is heavily enmeshed with disputed and uncertain facts. In both situations, a plea should waive the defendant's right to make

the state prove beyond a reasonable doubt the facts necessary to support guilt.

*Kelty*, ¶ 42, 716 N.W.2d at 899.

[¶30]  For these reasons, we adopt *Broce* as the analysis to govern our review of double jeopardy claims following a defendant's entry of an unconditional guilty or no contest plea.

## C.      **Application of the *Broce* Rule**

[¶31]  Having adopted the *Broce* rule, we turn to the State's argument that application of the rule requires a finding that Mr. Redding's no contest plea resulted in a waiver of his double jeopardy claim.  We disagree.

[¶32]  The State contends that Mr. Redding's double jeopardy claim was waived because his claim cannot be resolved without having an evidentiary hearing to resolve disputed issues of fact.  In so arguing, the State does not specify the fact issues that would require an evidentiary hearing before reaching the merits of Mr. Redding's double jeopardy claim, and we are unable ourselves to identify any unresolved issues of fact.  During the plea hearing, defense counsel informed the district court that while the prosecutor would be providing the factual basis for Mr. Redding's no contest plea, Mr. Redding did not deny the factual allegations against him.  Defense counsel specifically agreed that when the two officers were escorting Mr. Redding from his property, Mr. Redding grabbed the gate and elbowed one of the officers.  In asserting his double jeopardy claim on appeal, Mr. Redding has not deviated from his admissions.

[¶33]  This distinguishes this case from one like *Kelty*, the Wisconsin decision discussed above.  In that case, the defendant was charged with two counts of intentionally causing great bodily harm to a child.  *Kelty*, ¶ 5, 716 N.W.2d at 889.  The criminal complaint asserted the defendant struck a sixteen-month old baby in the head at least twice with two different objects, and at the preliminary hearing, the child's treating surgeon testified that in his opinion, the injuries were caused by two separate blows with two different types of weapons.  *Id*.  The defendant pled guilty to two counts of first degree reckless injury and then appealed her conviction on double jeopardy grounds.  *Id*., ¶¶ 10-11, 716 N.W.2d at 890.  She contended she only committed and could be convicted of one offense, reasoning:

> that she struck the baby in such rapid succession with different parts of the same instrument that the acts were identical in fact because she did not have "sufficient time for reflection between the acts to re-commit [herself] to the criminal conduct."

*Kelty*, ¶ 49, 716 N.W.2d at 900.

[¶34]  The Wisconsin court concluded that the defendant had waived her double jeopardy claim.  *Kelty*, ¶ 51, 716 N.W.2d at 901.  The court reasoned:

> The record contains evidence to support the charges, but we cannot determine with certainty from the record exactly how Kelty inflicted the baby's injuries. In other words, we cannot determine with certainty whether Kelty's two convictions for first-degree reckless injury were multiplicitous. All we know is that the State had the power to prosecute both counts on the evidence available; the defendant pled guilty to both counts after hearing the charges and the evidence, and after conferring in detail with her attorney; and the court, after a very thorough plea colloquy, had the power to convict and sentence the defendant on both counts. Without additional fact-finding, we could not learn more than we know now. Accordingly, we conclude that Kelty's guilty plea relinquished her opportunity to have a court determine the merits of her multiplicity challenge. *See Broce*, 488 U.S. at 575-76, 109 S.Ct. 757.

*Kelty*, ¶ 51, 716 N.W.2d at 901.

[¶35]  In contrast to *Kelty*, we know with certainty what Mr. Redding did on the evening in question, and in asserting his double jeopardy claim, Mr. Redding does not deny the conduct alleged.  Under *Broce*, we look to the record as it existed when the defendant pled, and we will consider the merits of a double jeopardy claim if the claim can be resolved on the basis of that record.  Based on the record as it existed when Mr. Redding pled, we know: the elements of the offenses with which Mr. Redding was charged; the conduct Mr. Redding admitted and the offenses to which he pled guilty; and the conduct on which the State based the charged offenses.  This is everything we need to determine the merits of Mr. Redding's double jeopardy claim, and we therefore find no factual gaps in the record that would preclude our review.

[¶36]  We also reject the State's argument that this case should be likened to *Broce*, where the record the Court had before it consisted solely of two charging documents setting forth two distinct charges and the plea by which the defendant acknowledged the separate charges and pled guilty to the separate charges.  The State argues:

> When Redding unconditionally pleaded no contest, he surrendered his right to assert that the charges against him

14

violated the Double Jeopardy Clause. In exchange, the State surrendered its right to pursue the felony charge and agreed to reduce the felony to a misdemeanor. When he pleaded no contest, Redding did not dispute the State's theory that he committed two separate criminal acts—misdemeanor interference inside his house and felony interference outside his house. (Change of Plea and Sentencing Tr. At 80-81, July 6, 2015). Both Redding and the State made concessions to enter the plea agreement, and the Court should not permit Redding to raise the double jeopardy defense that he waived by pleading no contest.

[¶37] Essentially, the State contends that Mr. Redding acknowledged he committed two separate offenses when he entered his plea and his double jeopardy challenge impermissibly contradicts that concession. The record does not support this argument.

[¶38] First, the plea agreement in this case was not a bargained-for waiver of Mr. Redding's double jeopardy claim as suggested by the State. During the plea hearing, the prosecutor gave the State's reason for reducing the charge against Mr. Redding from felony interference to misdemeanor interference. The prosecutor explained the charge was reduced because, upon review of Mr. Redding's medical records, the State concluded that Mr. Redding swung his elbow in reaction to "tremendous" pain he was experiencing in his injured right hand, not in an attempt to resist arrest or interfere with the officer. The prosecutor elaborated:

> I've discussed this with the police officer involved, Michael Ableman, and he – he agrees. He knew that the Defendant was in pain. He thought they had resolved that in the house before leading him out; but he has no problem with this reduction to a misdemeanor to give the Defendant the benefit of the doubt on that point.
> The State generally, on these types of cases, has a strong stance that in any – basically any case where somebody resists arrest and ends up causing the officer in question pain as a result of any kind of fight that occurs, basically he is going to get charged with a felony. It might get resolved down the line, but he is going to get charged and face that.
> This is the first case where we've done this where it's actually then come to light that maybe that was reaching too far. And everybody has had second thoughts about it – the police officer, myself, certainly the defense – so we've reached this conclusion that no, we're just going to admit it

15

straight up that we want to give the Defendant the benefit of the doubt in this instance.

[¶39] Contrary to the State's assertion, there was nothing in the parties' plea agreement to suggest that Mr. Redding acceded to the State's theory of two separate and distinct offenses. Indeed, during the plea hearing, the parties informed the district court that because of the double jeopardy question, they had decided to use a no contest plea and have the prosecutor provide the factual basis for the plea. Moreover, although the prosecutor in providing a factual basis for Mr. Redding's plea also expressly distinguished the factual basis for the second misdemeanor interference charge from the facts the State contended were the basis for the first misdemeanor charge, Mr. Redding did not respond with a wholesale agreement to the State's proffered distinction between the offenses. When the district court asked defense counsel if he disputed that the State would be able to put on such evidence, defense counsel limited his response, stating, "I don't dispute that the State would be able to have the officer testify that my guy grabbed the gate and then elbowed the officer[.]"

[¶40] The present case is simply not a case like *Broce* where the record contains nothing more than a charging document alleging separate and discrete offenses and the defendant's unqualified plea acknowledging and pleading guilty to those separate offenses. Mr. Redding's plea was not an unqualified acknowledgement of separate offenses, and, as we noted above, the record as it existed when Mr. Redding entered his plea contains all the information we need to resolve his double jeopardy claim. We therefore find no waiver of that claim.[4]

[¶41] Having concluded that Mr. Redding's no contest plea did not waive his double jeopardy claim, we turn to the merits of that claim.

## II. Merits of Mr. Redding's Double Jeopardy Claim

[¶42] Mr. Redding contends his felony interference prosecution violated his double jeopardy protections because he had already pled guilty to misdemeanor interference, a lesser included offense, for elbowing Officer Ableman when the State filed its information charging felony interference for the same conduct. The State counters that because Mr. Redding committed two separate offenses in two different locations at two different times, with the misdemeanor interference occurring in his home when he resisted arrest, and the felony interference occurring outside the home when he elbowed Officer Ableman, his prosecution for two interference charges did not violate his double jeopardy protections. We agree with the State.

---

[4]We do not mean with this holding to suggest that a no contest plea can never result in the waiver of a double jeopardy defense. If the double jeopardy claim requires evidence outside the record to resolve a disputed fact issue, the claim will be deemed waived by the plea.

[¶43] We have defined a defendant's federal and state constitutional double jeopardy protections as follows:

> The Fifth Amendment to the United States Constitution and article 1, section 11 of the Wyoming Constitution protect a person from twice being put in jeopardy of prosecution, conviction, or punishment for the same criminal offense. Though the two provisions differ in language, this Court has stated, "they have the same meaning and are co-extensive in application." *Landeroz v. State*, 2011 WY 168, ¶ 17, 267 P.3d 1075, 1080 (Wyo.2011) (quoting *Tucker v. State*, 2010 WY 162, ¶ 41, 245 P.3d 301, 311 (Wyo.2010)). Furthermore, we have said that the double jeopardy provisions of both Constitutions provide an accused three protections: "1) protection against a second prosecution for the same offense following an acquittal; 2) protection against a second prosecution for the same offense after a conviction; and 3) protection against multiple punishments for the same offense." Id. (citing *Vigil v. State*, 563 P.2d 1344, 1350 (Wyo.1977)).

*Derrera v. State*, 2014 WY 77, ¶ 23, 327 P.3d 107, 113 (Wyo. 2014); *see also Bowlsby*, ¶ 8, 302 P.3d at 916.

[¶44] To determine whether a defendant has been placed twice in jeopardy for the same offense, we apply the statutory elements test set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). *Sweets*, ¶ 23, 307 P.3d at 868; *Granzer v. State*, 2010 WY 130, ¶ 13, 239 P.3d 640, 645 (Wyo. 2010). The statutory elements test defines when one offense will be considered a lesser included offense of another and is stated as follows:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.

*Granzer*, ¶ 13, 239 P.3d at 645.

[¶45] We have recognized that "misdemeanor interference with a peace officer is a lesser-included offense of the greater charge of felony interference with a peace officer." *Pope v. State*, 2002 WY 9, ¶ 15, 38 P.3d 1069, 1072 (Wyo. 2002) (citing *Mueller v.*

*State*, 2001 WY 134, ¶ 14, 36 P.3d 1151, ¶ 14 (Wyo. 2001)). We have also observed, however, that:

> """[w]here, * * * different criminal acts are at issue, supported by different factual evidence even though separated in time only by a few seconds, one offense by definition cannot be 'included' in the other. The defendants can properly be punished for [all], under different, *or the same*, statutory provisions."""  *Baum*, 745 P.2d at 882, quoting *State v. Molitoni*, Hawaii App., 711 P.2d 1303, 1306 (1985), quoting *State v. Pia*, 55 Hawaii 14, 19, 514 P.2d 580, 584–585 (1973) (emphasis in original).

*Duffy v. State*, 789 P.2d 821, 826-27 (Wyo. 1990); *see also Pope*, ¶ 16, 38 P.3d at 1072 ("[T]he *Blockburger* analysis does not apply when the two charges involve different victims and different actions.").

[¶46] It is this rule of law we find controlling here. The record shows that when Mr. Redding was informed that he was under arrest for breach of peace, he ran back into his home and the officers had to wrestle with him inside the home to restrain him. Once the officers had Mr. Redding restrained, they escorted him from the home. It was not until they reached the gate that Mr. Redding again resisted the officers' attempt to arrest him, and it was there that Mr. Redding grabbed the gate and elbowed Officer Ableman in the jaw. These events were removed by time and place from the altercation that took place in the home and supported two separate interference charges.

[¶47] Mr. Redding's two acts of interference were separate acts, and he therefore was not prosecuted with two offenses for the same conduct. This is similar to the situation we considered in *Pope*. In *Pope*, officers responded to a domestic disturbance at Pope's residence and encountered resistance when they attempted to arrest him. *Pope*, ¶¶ 4-6, 38 P.3d at 1070-71. Pope first struggled against two officers while in the upstairs portion of his residence and then kicked a third officer as the first two officers were taking him down a flight of stairs in his residence. *Id.*, ¶¶ 6-7, 38 P.3d at 1070-71. Pope was then charged with misdemeanor interference for his conduct toward the first two officers, and felony interference for the injuries he inflicted on the third officer. *Id.*, ¶ 9, 38 P.3d at 1071.

[¶48] Pope pled guilty to the misdemeanor interference charge and then sought dismissal of the felony charge on double jeopardy grounds. *Pope*, ¶¶ 10-11, 38 P.3d at 1071. The district court denied the motion to dismiss, and Pope was convicted following a jury trial. *Id.*, ¶¶ 11-12, 38 P.3d at 1071-72. On appeal, we rejected his double jeopardy claim, reasoning:

> Under the facts of this case, it is clear that the charges involved two distinct actions against two different victims. Pope could be prosecuted for each of these incidents without violating his constitutional right to be free from being placed twice in jeopardy.

*Pope*, ¶ 19, 38 P.3d at 1073.

[¶49]  The same is true here.  Mr. Redding committed two separate acts of interference, one inside his home and one outside his home, and double jeopardy does not preclude him from being charged separately for each offense.

[¶50]  Mr. Redding contends that *Pope* is distinguishable because the defendant in that case knew of the felony charge when he pled guilty to the misdemeanor charge, whereas Mr. Redding had no notice that the State would be filing the felony information against him.  Mr. Redding also points to the fact that in pleading guilty to the first misdemeanor interference charge, he admitted that his conduct included accidentally elbowing Officer Ableman in the jaw.  Based on this admission, he contends that he was placed in jeopardy for that conduct and could not be prosecuted a second time for the same conduct.

[¶51]  Mr. Redding directs us to no authority that either the lack of notice of the additional charge or his admission of conduct charged under the second offense is material to a double jeopardy analysis.  We find the arguments in fact run contrary to our precedent.

[¶52]  First, Mr. Redding's argument that his admission during the first plea hearing placed him in jeopardy for elbowing Officer Ableman is unpersuasive.  We reject the notion that a defendant can expand the scope of the charges against him by including extraneous facts in his plea colloquy.  The crime to which Mr. Redding pled guilty in Circuit Court was "Interference – to wit resisting arrest," in violation of Wyo. Stat. Ann. § 6-5-204(a).  That crime is distinct from the felony with which Mr. Redding was later charged, which includes causing or attempting to cause "bodily injury to a peace officer." Wyo. Stat. Ann. § 6-5-204(b).  Thus, jeopardy attached only to the misdemeanor interference offense relating to his altercation inside his home.[5]

---

[5] That is not to say we accept the State's contention that it cleared up any confusion in the first charge during the second plea hearing.  A charge must "be sufficiently definite so that the defendant can prepare his defense and be granted protection from further prosecution for the same offense (double jeopardy)." *Hulsy v. State*, 2009 WY 81, ¶ 9, 209 P.3d 901, 904 (Wyo. 2009), citing *Gonzales v. State*, 551 P.2d 929, 933 (Wyo.1976).  If the first charge against Mr. Redding were not sufficiently definite, we find it difficult to see that a subsequent clarification during a plea hearing on a separate charge can cure that defect.  The adequacy of the charging documents is not, however, the question before this Court, and we therefore do not consider it further.

[¶53] We find Mr. Redding's notice argument equally unavailing. The argument suggests that all charges relating to a single episode must be brought in a single prosecution, but that proposition has been solidly rejected by the United States Supreme Court and this Court:

> Expanding on that theme it has been argued that the government is obligated "to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction." *Ashe v. Swenson*, 397 U.S. 436, 453–454, 90 S.Ct. 1189, 1199–1200, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring). But that was not the view of the majority, a point emphatically driven home by Justice Harlan, *ibid.* at 448, 90 S.Ct. at 1196, and that notion has been subsequently rejected. In *Garrett v. United States*, 471 U.S. at 790, 105 S.Ct. at 2417, the Court said: "We have steadfastly refused to adopt the 'single transaction' view of the Double Jeopardy Clause." So it is in Wyoming, as well. *State v. Carter*, 714 P.2d 1217, 1220 (Wyo.1986). Within limits set by the legislature the State may chose [sic] how and when it will charge different offenses arising from the same incident, but it may try the same offense only once.

*Nowack v. State*, 774 P.2d 561, 566 (Wyo. 1989).

[¶54] Because the order in which the State chooses to charge separate offenses arising from the same incident does not implicate double jeopardy concerns, we can discern no double jeopardy requirement that the State provide notice of all potential charges before a court may accept a guilty plea. It may be that Mr. Redding feels he did not receive adequate notice of his full criminal exposure and alternatives before entering his first guilty plea. He did not, however, appeal his first conviction or move to withdraw his plea, and since his concerns are not relevant to our double jeopardy analysis, we do not consider them further.

[¶55] Mr. Redding committed two separate offenses at two different times during the events of December 26, 2014. The misdemeanor interference occurred in his home when he resisted arrest, and the felony interference occurred outside his home when he elbowed an officer. His prosecution for two interference charges therefore did not violate his double jeopardy protections.

## CONCLUSION

[¶56] We hold that a reviewing court may consider the merits of a defendant's double jeopardy challenge following entry of an unconditional guilty or no contest plea if the

20

claim can be resolved on the basis of the charging documents and/or the record as it existed at the time the defendant pled. If resolution of the claim requires evidence outside the existing record, the claim shall be deemed waived by the guilty or no contest plea.

[¶57] In this case, we are able to determine the merits of Mr. Redding's double jeopardy claim based on the existing record, and we therefore find no waiver of that claim. On the merits, however, we find no double jeopardy violation. Mr. Redding committed two separate acts of interference, one inside his home and one outside his home, and could lawfully be prosecuted for each separate offense.