BURKE, Chief Justice.
*887 [¶1] Appellant, Jonathan Lee Volpi, was convicted of several crimes arising from a violent episode involving his girlfriend. He challenges his convictions for strangulation of a household member, domestic battery, and two counts of kidnapping.[1] He claims the district court erred by permitting the State to introduce evidence of prior instances of misconduct involving the same victim. He also contends the court violated his double jeopardy protections by entering two separate convictions for kidnapping and by entering separate convictions for domestic battery and strangulation of a household member. We reverse Appellant's second kidnapping conviction and affirm the remaining convictions.
ISSUES
[¶2] Appellant presents three issues:
1. Did the district court abuse its discretion in allowing the State to introduce evidence of uncharged misconduct?
2. Do the two convictions for kidnapping violate Appellant's protections against double jeopardy?
3. Do the separate convictions for domestic battery and strangulation of a household member violate Appellant's protections against double jeopardy?
FACTS
[¶3] On June 27, 2015, Appellant and A.M., who was Appellant's girlfriend at the time, attended a party. At some point, Appellant asked A.M. to go outside with him. Once outside, Appellant insisted on leaving the party immediately and did not let A.M. go back inside to say goodbye to the other guests or to put on her shoes. They went to her car. A.M. thought that Appellant just wanted to go "down the street to have sex in the car." They drove a short distance and parked in a cul-de-sac. Appellant "brought up the sex" and A.M. told him no "because there were houses right there." Appellant then told her to take him home. A.M. asked if she could go back to the party for her shoes and cigarettes, and to say goodbye and Appellant said "no." A.M. then proceeded to drive towards their apartment.
[¶4] During the drive, Appellant fooled with the gear shift, attempting to shift it into park and reverse while the vehicle was moving. A.M. stopped the vehicle in an effort to avoid damage to the transmission and to convince Appellant to stop that conduct. Once the vehicle was stopped, Appellant grabbed the keys from the ignition and pretended to throw them out the window. After A.M. exited the vehicle to search for the keys, Appellant attacked her. He forced A.M. to her knees, grabbed her by the hair, and slammed her head on the ground. He then told A.M. that he still had the keys and the two returned to the vehicle. A.M. sat in the passenger seat and Appellant drove. During the drive, A.M. attempted to call the police but Appellant grabbed her phone and threw it out the window. He began speeding and A.M. begged him to stop. In response, Appellant ripped off the sun visors and rear-view mirror and threw them out the window.
[¶5] When they arrived at their home, A.M. went in first. She attempted to retrieve her dog and leave through the back door. Before she could escape, however, Appellant discovered that the dog had defecated on the floor. He picked up the feces and shoved it into A.M.'s mouth. Appellant then pinned A.M. to the floor, put her arm behind her back, and sat on her. He then covered A.M.'s mouth and nose with his hand. A.M. "could not breathe" and felt like she was going to pass out.
[¶6] Appellant eventually released A.M. and allowed her to get up. She went to the kitchen sink to wash the feces from her mouth. While she was at the sink, Appellant attacked her again. This time, Appellant grabbed A.M. by her hair and pushed her head into a cabinet. He then held a knife to her throat. He told A.M. they were going to a *888 hotel. When A.M. stated that she did not want to go, Appellant picked her up, walked out of the apartment, and threw her in the backseat of her car. He then drove at high speeds toward the Cam-Plex, outside of Gillette.
[¶7] A deputy with the Campbell County Sheriff's Office observed the car speeding towards him. He activated his lights and pulled the car over. After stopping, Appellant attempted to flee the scene. He was subsequently apprehended and arrested. Law enforcement backup was called to the scene and emergency medical personnel arrived and provided treatment to A.M. Marijuana was discovered during a search of the vehicle after Appellant was placed in custody. A.M. told law enforcement that it belonged to Appellant. Appellant was arrested and charged with a variety of crimes.[2]
[¶8] Prior to trial, Appellant requested notice of the State's intent to offer evidence under Rule 404(b) of the Wyoming Rules of Evidence. The State filed a response indicating its intent to introduce evidence of two prior instances of domestic violence committed by Appellant against A.M. and evidence of Appellant's methamphetamine and prescription drug abuse. Appellant objected. Following a hearing, the district court entered an order permitting the State to introduce evidence relating to the two prior instances of domestic violence and excluding the drug abuse evidence.
[¶9] After a three-day jury trial, Appellant was found guilty of all charges except aggravated assault and battery. The district court imposed concurrent sentences of imprisonment on the misdemeanors: six months for domestic battery, twelve months for interference with a peace officer, six months for destruction of property, and six months for possession of a controlled substance. For his conviction of strangulation of a household member, Appellant was assessed a fine of $10,000 and sentenced to three to five years of incarceration, to run consecutively to the misdemeanor sentences. For each count of kidnapping, Appellant was sentenced to a prison term of eight to sixteen years. At the sentencing hearing, the court stated that the sentences for kidnapping were to run consecutively to the other sentences but concurrent with each other. The written judgment, however, stated that Appellant's sentences for kidnapping were to be served consecutively to the other sentences and consecutively to each other. Appellant filed a timely appeal.
DISCUSSION
I. Rule 404(b) Uncharged Misconduct
[¶10] In his first issue, Appellant contends the district court abused its discretion in admitting evidence of uncharged misconduct under Rule 404(b). He challenges the admission of evidence relating to two prior instances of misconduct. The first incident occurred in October 2014, approximately eight months before the events giving rise to the present case. The second incident occurred approximately "a week or two" prior to the events at issue.
[¶11] Appellant contends that the evidence was not properly admissible under W.R.E. 404(b), that the district court failed to provide adequate justification for admission of the evidence in its pretrial order, and that the "only relevance appears to be as forbidden propensity evidence." Appellant filed a pretrial demand for notice of the State's intent to introduce evidence under W.R.E. 404(b), and objected to the admissibility of that evidence at the pretrial hearing. Accordingly, we review the district court's decision admitting the uncharged misconduct evidence for an abuse of discretion. Dougherty v. State , 2016 WY 62, ¶ 17, 373 P.3d 427, 432 (Wyo. 2016). In evaluating whether there has been an abuse of discretion, we must determine whether the district court could reasonably have concluded as it did. Id . As long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal. Id .
[¶12] W.R.E. 404(b) provides:
(b) Other crimes, wrongs, or acts .-Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in *889 conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
We have long recognized that admission of 404(b) evidence carries the risk of inherent prejudice.
The general rule is, of course, that such evidence is not admissible, and for good reason:
...
Especially in criminal cases, what may be called the basic rule of exclusion is a rule of fundamental importance in American law. It implements the philosophy that a defendant should not be convicted because he is an unsavory person, nor because of past misdeeds, but only because of his guilt of the particular crime charged. In practical effect, the Rule limits use of prior crimes, calling for exclusions where the evidence tends only to show propensity. As the Supreme Court has stated emphatically, such evidence is excluded not because it is irrelevant, but because "practical experience" teaches that exclusion "tends to prevent confusion of issues, unfair surprise and undue prejudice."
Wease v. State , 2007 WY 176, ¶ 59, 170 P.3d 94, 116 (Wyo. 2007) (emphasis in original) (quoting 1 Christopher B. Mueller and Laird C. Kirkpatrick, Federal Evidence , § 4:21, at 691-92 (3rd ed. 2007) (quoting Michelson v. United States , 335 U.S. 469, 475-76, 69 S.Ct. 213, 218-19, 93 L.Ed 168 (1948) ) ). Because of that risk, we require a pretrial hearing to determine the potential admissibility of proposed 404(b) evidence. Howard v. State , 2002 WY 40, ¶ 23, 42 P.3d 483, 491 (Wyo. 2002).
[¶13] We have listed the factors for testing the admissibility of uncharged misconduct evidence under Rule 404(b) :
(1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.
Gleason v. State , 2002 WY 161, ¶ 18, 57 P.3d 332, 340 (Wyo. 2002) ; United States v. Herndon , 982 F.2d 1411, 1414 (10th Cir. 1992). We have instructed trial courts to consider five factors when determining the probative value of prior bad acts evidence:
1. How clear is it that the defendant committed the prior bad act?
2. Does the defendant dispute the issue on which the state is offering the prior bad acts evidence?
3. Is other evidence available?
4. Is the evidence unnecessarily cumulative?
5. How much time has elapsed between the charged crime and the prior bad act?
Gleason , ¶ 27, 57 P.3d at 342. Further, we require the trial court to identify the purpose or purposes for admission of the evidence, to articulate its findings regarding relevance and probative value, and to list the factors it considered in balancing probative value against the potential for unfair prejudice. Id. , ¶ 30, 57 P.3d at 343. We warned that the " 'shotgun approach' of listing every conceivable purpose for admissibility, followed by a bald statement that probative value outweighs prejudicial effect will no longer be sufficient." Id .
[¶14] In this case, it is undisputed that a proper pretrial hearing was held and that the district court provided its ruling in a decision letter prior to trial. Appellant contends, however, that the district court's findings are inadequate to support admission of the evidence and that the district court abused its discretion in admitting the evidence. We agree with Appellant.
[¶15] In an order entered by the district court following the hearing, the court found
that the evidence regarding the events of June 20, 2015 (approximately one week prior to the events alleged in the case at bar; Defendant's act of domestic violence against the same victim)[3 ] and in October *890 2014 (Defendant's throwing nude victim out of bed and dragging her outside) are admissible in the State's case in chief.[4 ]
In its decision letter, incorporated into the order by reference, the district court identified three purposes for this evidence. We will address each in turn.
[¶16] First, the court concluded that the evidence was relevant in establishing A.M.'s state of mind and to place her behavior in context. There are two primary concerns with this ruling: (1) the evidentiary ruling should have been conditional; and (2) the State failed to provide an adequate basis for admission of course of conduct evidence.
[¶17] In our precedent involving 404(b) evidence, we have routinely emphasized the need for pretrial determination of 404(b) evidentiary issues. As we stressed long ago and have regularly repeated: "Rulings on uncharged misconduct evidence are too important to be made in the heat and pressure of a trial, with the jury twiddling its thumbs in the next room." Howard , ¶ 23, 42 P.3d at 491 ; Garrison v. State , 2018 WY 9, ¶ 17, 409 P.3d 1209, 1215 (Wyo. 2018). We reaffirmed our preference for pretrial determination of 404(b) issues recently in Garrison , ¶ 18, 409 P.3d at 1215 :
To ensure there is no doubt in the future as to the timing of the Gleason analysis, while maintaining our preference for a pretrial determination, we hold that, at a minimum, the Gleason analysis must be made contemporaneously with the ruling on admissibility and prior to the admission of any 404(b) evidence.
In emphasizing the preference for pretrial determination, however, we also cautioned that not all 404(b) issues can be definitively resolved prior to trial. In many situations, a conditional ruling is appropriate. "We recognize that, at times, the trial court can only make a conditional 404(b) ruling pretrial, and must make a final ruling during trial after determining other evidentiary matters such as foundation." Id ., ¶ 18 n.2, 409 P.3d at 1215 n.2. See also W.R.E. 104(b) ("When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of fulfillment of the condition."). Rulings of conditional admissibility are particularly appropriate when the decision is based upon "proffered" testimony.
[¶18] In the present case, the State's argument in favor of admission was premised entirely on its understanding of the expected testimony of A.M. As set forth in the court's decision letter: "Specifically, the State intends for the victim to testify that, given the abuse she had suffered at the hands of Defendant prior to the events at issue, she feared Defendant and 'knew better' than to refuse to comply with his directives." The district court made it clear that its order was "[b]ased upon the State's proffer of the victim's testimony." Unfortunately, in many cases and for a variety of reasons, the testimony that the State represents will be forthcoming differs from the testimony that actually occurs at trial.[5] Because of that possibility, the evidentiary ruling admitting the evidence should be conditioned upon the presentation of an adequate foundation for the evidence. That did not occur in this case.
[¶19] The district court's order provided no indication that admissibility was conditional in any way. As a result, A.M. testified about the prior incidents near the beginning of her testimony, before any foundation was laid concerning her state of mind or behavior. The evidence should have been admitted only after the State provided an adequate foundation. The district court abused its discretion in failing to make the evidentiary ruling conditional.
*891 [¶20] We need not decide whether the State ultimately provided an adequate foundation in this case because Appellant has not raised that issue on appeal. We discuss it, however, as a caution to prosecutors, defense counsel, and trial courts. If prosecutors urge admissibility subject to fulfillment of evidentiary conditions, they should be required to satisfy those conditions. If evidence is admitted conditionally prior to trial, defense counsel should object to any order that does not make admissibility conditional and should remain vigilant during trial to ensure that the conditions for admission have been fulfilled before evidence is received. Courts should be ever mindful of the inherently prejudicial nature of 404(b) evidence, and recognize that conditional rulings are appropriate in many instances.
[¶21] We also conclude that the district court abused its discretion in admitting the prior acts evidence for the purpose of explaining A.M.'s behavior and state of mind. The State relies on Moore v. State , 2003 WY 153, 80 P.3d 191 (Wyo. 2003), to support the admissibility of the evidence. In that case, we held that evidence of prior similar assaults against the same victim was admissible, in part, under Rule 404(b) in order "to support the credibility and corroborate the testimony of the victims." Id ., ¶ 23, 80 P.3d at 197. We also determined that the evidence "was admissible to show that Moore intended to control the actions of [the victims], and that his past conduct established that he was capable of carrying out the threats that he made to his victims in order to keep them from escaping." Id. In this case, the State made similar arguments while urging admission of the 404(b) evidence. The facts of this case, however, are easily distinguished from those at issue in Moore .
[¶22] In Moore , ¶¶ 1, 6, 80 P.3d at 194-95, the defendant was charged with aggravated assault and kidnapping, among other crimes, after an incident in which he hit his wife in the face with a handgun and subsequently confined his brother and his wife in their home for several days. Over defendant's objections, his wife testified about previous instances of violence at the hands of the defendant.
The disputed evidence consisted of testimony about the history of abusive behavior of Moore toward Ms. James. Ms. James testified that for about six years preceding the events in question, Moore's relationship with her had become increasingly violent. There was testimony that Moore had a confrontation with Ms. James in a bar, following which she moved to Montana for a period to get away from him. She testified that Moore hit her "probably every week;" that the couple had a fight in a restaurant in Rawlins, after which Moore pulled her into a car, drove her out of town, hit and kicked her, and threatened to bury her. There was additional similar testimony of threats and abuse. The trial court conducted the proper hearings and admitted the evidence under W.R.E. 404(b).
Id. , ¶ 18, 80 P.3d at 196-97. We found no abuse of discretion in the district court's decision to admit the evidence, concluding that the evidence established that the defendant "was capable of carrying out the threats that he made to his victims in order to keep them from escaping." Id. , ¶ 23, 80 P.3d at 197.
[¶23] The victims in Moore were held for several days, during which they ran errands and could have easily escaped. Id. , ¶ 6, 80 P.3d at 194-95. The defendant's prior acts were relevant to explain why the victims did not attempt to escape. "Additionally, the court found that the evidence could be used by the jury to evaluate the credibility of Ms. James, an apparent reference to whether she was believable when she testified that she did not report the confinement because of her fear of Moore." Id. , ¶ 22, 80 P.3d at 197. In this case, the entire episode played out in a short period of time.[6] During the incident, A.M. attempted to call 911 for assistance but was prevented from doing so when Appellant *892 threw her phone out of the car. When they arrived home, A.M. attempted to escape but was prevented from doing so by Appellant. At all times, until she was rescued by law enforcement, A.M. was in close physical proximity to Appellant. She immediately reported the beating to the police at the scene. The officer described A.M. as "frantic" and that "she started screaming at me to help her and that he had beat her up."
[¶24] We recently addressed admission of 404(b) evidence involving course of conduct in Garrison , 409 P.3d 1209. That case also is distinguishable. In Garrison , the defendant was convicted of first-degree arson for setting fire to his estranged wife's mobile home. We found no abuse of discretion in the district court's decision to admit course of conduct evidence under W.R.E. 404(b). We did so largely because the identity of the arsonist was in dispute and an understanding of motive was relevant to establishing the identity of the arsonist. We specifically recognized limitations to the course of conduct rationale for admission of 404(b) evidence.
We recognize the danger that a course of conduct exception, standing alone, could swallow the general rule against admission of "other crimes, wrongs, or acts," and we emphasize that it must be linked to another legitimate purpose. Here, the identity of the arsonist was in dispute, and the course of conduct served to establish both motive and identity.
Id ., ¶ 29, 409 P.3d at 1217-18. No similar justification for admission of the prior acts evidence under the course of conduct exception exists in this case.
[¶25] As a second basis for admitting the evidence, the court determined that the evidence was offered for the purpose of establishing Appellant's "intent, motive, knowledge, and plan/scheme." The court's order resembles the " 'shotgun approach' of listing every conceivable purpose for admissibility" that we condemned in Gleason , ¶ 30, 57 P.3d at 343. Appellant was charged with eight separate crimes, but the district court never identified the specific crimes for which the prior bad acts evidence was relevant or probative. The decision letter contains only the observation that the "counts alleging strangulation, kidnapping (by removal), kidnapping (by confinement), and domestic battery each have an element of intent. Strangulation and domestic battery contain, as an alternative to intent, knowledge elements." Although the district court's order admitting the evidence contemplated the possibility of a limiting instruction pertaining to the evidence, it is difficult to see how an appropriate instruction could be crafted without an understanding of the specific crimes to which the evidence applied.
[¶26] The district court also failed to provide any explanation of how Appellant's prior bad acts reflected on his "intent, motive, knowledge, or plan/scheme." The October episode that occurred eight months prior is particularly concerning. We would note at the outset that the district court's understanding of the first incident, when making its pretrial ruling, differed from A.M.'s description of the incident at trial. In its decision letter, the district court, apparently relying on representations of the State, described the incident as "Defendant's throwing nude victim out of bed and dragging her outside." A.M.'s testimony at trial presented a less serious scenario. According to A.M.'s trial testimony, she and Appellant had "gotten into an argument." She could not recall what the argument was about, but thought that Appellant became angry because the volume on the television was too loud and he was trying to sleep. She testified that he "pulled me out of the bedroom ... and put me into the living area downstairs." He told her she "needed to leave." She asked if she "could just go back to bed," and he agreed. A.M. turned the television off and "went to sleep."
[¶27] Regardless of which version of the incident is the basis for the evidentiary ruling, it is difficult to discern any relevance or probative value of that incident to the crimes charged. It is not enough simply to identify those crimes that may have a knowledge or intent element in order for 404(b) evidence to be admissible. As Appellant observed:
The court noted that the statutes charged had intent or knowledge elements. This is not particularly enlightening because all criminal statutes have intent or knowledge or some type of mens rea requirements.
*893 Simply because all statutes have intent requirements does not mean that uncharged conduct evidence is allowed in all criminal cases. That exception would swallow the need for the rule.
[¶28] We previously referenced factors that the court must consider in determining whether the prior acts evidence was probative.[7] When those factors are properly considered, it becomes apparent that the evidence is not probative. The second factor requires the district court to evaluate whether the defendant is disputing the issue on which the State is offering the prior bad acts evidence. There does not appear to be any indication that Appellant was disputing the knowledge or intent elements of any of the crimes charged. His defense was centered around A.M.'s credibility. There is no suggestion that the crimes charged resulted from some "plan" of Appellant. This was not a case in which the defendant was claiming accident or mistake. He essentially conceded that he was guilty of some of the crimes charged, including domestic battery.[8] As to motive, to the extent that it was relevant, it is difficult to see how the prior acts shed any light on Appellant's motive for committing the crimes charged.
[¶29] More significantly, to the extent that the evidence may have been relevant or probative to prove intent, knowledge, or motive, other evidence was available. The availability of other evidence is a crucial factor in the 404(b) analysis. The court is to consider whether other evidence is available and whether the proposed evidence would be cumulative. The availability of other evidence weighs against admission of the 404(b) evidence in this case. A.M.'s testimony about the events of that evening was sufficient to satisfy all of those elements. The district court overlooked that evidence in assessing the probative value of the 404(b) evidence.
[¶30] According to the district court when discussing the prior acts: "This evidence appears to be the only proposed evidence that would demonstrate the Defendant's intent, motive, knowledge and plan/scheme." Stated differently, the district court appears to be saying that without the 404(b) evidence, there would not be sufficient evidence to secure a conviction. That is simply incorrect. Evidence of the Appellant's conduct during the commission of the charged crimes was far more probative of his intent than was evidence of the prior incidents. To the extent that evidence of those incidents was in any way relevant and probative, it was cumulative and should not have been admitted.
[¶31] The district court also identified a third basis for admission of the 404(b) evidence. The court, sua sponte , determined that "the victim's testimony as to Defendant's prior acts provides evidence of the continuity of the relationship between the victim and Defendant, and goes to demonstrate that this was a relationship of the type anticipated under the 'household member' definition as charged in Counts II and V."[9] This aspect of the district court's ruling was only addressed briefly by Appellant and the State does not claim on appeal that the 404(b) evidence should have been admitted for that purpose. However, a brief comment is warranted. Admission of that evidence, in this case, for that purpose indicates a lack of appreciation of the unfair prejudice aspect of the 404(b) equation. The evidence of "household member" was available from A.M. without any need to reference the 404(b) incidents. To the extent that either of those incidents was relevant and probative of the "household member" relationship, the evidence was cumulative and should not have been declared admissible for that purpose.
[¶32] Finally, although the parties have done so, we cannot ignore the limiting instruction provided to the jury. As we have discussed at length, the State urged admission of the evidence, in large part, to bolster A.M.'s credibility and to provide context to *894 her actions. The State prevailed on the motion and the district court ordered that the evidence was admissible for those purposes. The court also indicated that a limiting instruction would be given if requested and ordered the parties to submit a proposed limiting instruction. Shortly thereafter, and prior to trial, the State submitted a proposed limiting instruction and Appellant responded indicating no objection to the instruction. The instruction was given to the jury during A.M.'s testimony. The instruction[10] states in pertinent part as follows:
You have heard a certain category of evidence called "similar acts" evidence. Here, that evidence is that the Defendant became assaultive with [A.M.] in or around October 2014, and in or around June 20, 2015. You may not use this "similar acts" evidence to decide whether the Defendant carried out the acts involved in the crimes charged in the Information. In order to consider the "similar acts" evidence at all, you must first unanimously find beyond a reasonable doubt, based on the rest of the evidence introduced, that the Defendant carried out the acts involved in the crimes charged in the Information. If you make that finding, then you may consider "similar acts" evidence to decide Defendant's intent, motive, knowledge, or his plan/scheme.
(Emphasis added.) It is not clear from the record why the State submitted the instruction without identifying all of the purposes previously urged by the State and ordered by the court for which the evidence could be considered. It is clear, however, that credibility of the victim and continuity of the relationship for purposes of establishing "household member" were not identified in the instruction as proper purposes for which the evidence could be considered by the jury. In light of that instruction, we cannot affirm admission of the evidence for those purposes.[11] For all of the reasons previously stated, we conclude that the district court abused its discretion in admitting the 404(b) evidence.
[¶33] That determination, however, does not end the inquiry. We still must determine whether the error was prejudicial.
Even if the district court admitted evidence in error, we must consider whether the error was prejudicial or harmless. Error is prejudicial if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had not been made. Prejudicial error requires reversal, while harmless error does not.
Lindstrom v. State , 2015 WY 28, ¶ 22, 343 P.3d 792, 798 (Wyo. 2015) (quoting Payseno v. State , 2014 WY 108, ¶ 20, 332 P.3d 1176, 1182 (Wyo. 2014) ). Based upon our review of the record, we are firmly convinced that the error was harmless.
[¶34] This was not a close case. Appellant has not challenged his conviction for interference with a peace officer. During closing argument he essentially conceded the reliability *895 of the evidence presented to the jury on that issue. "There are no ifs, no ands and no buts. Jonathan Volpi interfered with a peace officer. Straight up. You can't get much more interference than taking off running like that and [getting tasered]."
[¶35] At trial, defense counsel essentially conceded the domestic battery charge. Counsel stated:
The domestic battery. Something went on. You saw the injuries. And I'm not going to sit here and try to say it didn't happen. You saw there was an injury to [the] back of her head. You saw there were some scrapes on her knees. You saw some bite marks. Not going to try to hide from that, folks. You get to decide if it's domestic battery or not.
Appellant has not challenged his destruction of property conviction relating to the damage done to the vehicle and A.M.'s phone. Additionally, the testimony of several witnesses supported A.M.'s version of the events. The police officer who stopped Appellant and A.M. after the car chase observed that A.M. was frantic, shaking, and crying uncontrollably. Law enforcement personnel and emergency medical technicians identified scratches on A.M.'s back, scrapes on her knees, a cut with dried blood on the back of her head, a bite mark on her forearm, and a cut with dried blood on her lower lip.
[¶36] The State's use of the 404(b) evidence at trial was minimal. A.M.'s testimony about the prior incidents was brief. The State did not mention those incidents in its opening statement or closing argument. Appellant concedes that the October 2014 incident, in which he pulled A.M. out of bed, was not prejudicial. According to Appellant, "It is frankly difficult to conceive that the October television testimony had any effect at all on the verdict in this case because it is innocuous and inconsequential."
[¶37] Appellant's primary focus at trial was directed to the charges of aggravated assault and battery, kidnapping, and strangulation. As previously mentioned, Appellant was not convicted of aggravated assault and battery. His theory of defense centered primarily upon attacking A.M.'s credibility.
Just because she said it, doesn't make it true. ... And now we're getting into the more serious, ugly charges. We're talking about kidnapping somebody. We're talking about aggravated assault, holding a knife to somebody's throat, and we're talking about strangulation. And I want you to think about what solid, tangible evidence there is of any of that. What do you have? You've got [A.M.'s] word that it happened. That's what you've got.
[¶38] Appellant's counsel effectively cross-examined A.M. about the second prior incident and utilized that testimony in an attempt to undermine her credibility:
What else are we missing? [A.M.] wants you to believe that she went to the doctor a week earlier for getting the crap beat out of her. Do we have any doctors' reports? No. Do we have a doctor to come and say, Yeah, she came in? No.
She tells us she went and saw GARF.[12 ] Do we have a GARF intake? No. Do we have a GARF advocate? No. Yet the night this all went down she told the officer this is what happened. We don't have it.
The State's case was in large measure dependent on A.M.'s credibility. To the extent that Appellant was able to undermine A.M.'s credibility, the evidence concerning the second incident worked to Appellant's benefit, not to his prejudice.
[¶39] Considering all of the evidence introduced at trial, we find no reasonable possibility that the verdict might have been more favorable to Appellant had the evidence relating to the prior assaults been excluded. The district court's admission of that evidence was harmless.
II. Double Jeopardy-Kidnapping
[¶40] In his second issue, Appellant contends that his convictions and sentences for two counts of kidnapping violate double jeopardy. Appellant did not object *896 below, so we review for plain error. Solis v. State , 2013 WY 152, ¶ 61, 315 P.3d 622, 635 (Wyo. 2013).
To establish plain error, the appellant must prove (1) the record clearly reflects the alleged error; (2) the existence of a clear and unequivocal rule of law; (3) a clear and obvious transgression of that rule of law; and (4) the error adversely affected a substantial right resulting in material prejudice to him.
Id . (quoting Bowlsby v. State , 2013 WY 72, ¶ 6, 302 P.3d 913, 916 (Wyo. 2013) ).
[¶41] Wyoming's kidnapping statute provides as follows:
(a) A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business or from the vicinity where he was at the time of the removal, or if he unlawfully confines another person, with the intent to:
(i) Hold for ransom or reward, or as a shield or hostage;
(ii) Facilitate the commission of a felony; or
(iii) Inflict bodily injury on or to terrorize the victim or another.
Wyo. Stat. Ann. § 6-2-201 (LexisNexis 2015). Appellant contends there was only one kidnapping under the facts of this case. Appellant claims that, because Wyoming's kidnapping statute provides alternative means of committing the same crime, the statute permits only one kidnapping conviction relating to the same series of events, regardless of whether a defendant unlawfully removes and unlawfully confines a victim during the same period. He relies on Solis , ¶ 76, 315 P.3d at 639, in which we applied a presumption that the legislature intends only one crime where a statute is phrased in the disjunctive.
[¶42] The State claims that there were two separate kidnapping incidents: one occurring by confinement, when Appellant removed A.M. from the party and then prevented her from leaving their home with her dog; and a second kidnapping occurring when Appellant removed A.M. from the home and put her in the backseat of her car. Citing cases from several jurisdictions, the State acknowledges that kidnapping is "generally considered a continuing offense" that ends when "the victim regains his or her free will." It claims, however, that A.M. regained her liberty between the two kidnapping episodes, when Appellant released her after shoving dog feces in her mouth and allowed her to rinse out her mouth. According to the State, "A second kidnapping began after [Appellant] attacked [A.M.] at the kitchen sink." As a result, our review must determine whether there is sufficient evidence to support two kidnapping convictions. In reviewing the sufficiency of the evidence, we examine the evidence in the light most favorable to the State: "We accept all evidence favorable to the State as true and give the State's evidence every favorable inference which can reasonably and fairly be drawn from it. We also disregard any evidence favorable to the appellant that conflicts with the State's evidence." Thompson v. State , 2018 WY 3, ¶ 14, 408 P.3d 756, 761 (Wyo. 2018) (quoting Worley v. State , 2017 WY 3, ¶ 17, 386 P.3d 765, 771 (Wyo. 2017) (some citations omitted) ).
[¶43] We agree with the State that kidnapping is generally considered a "continuing offense." 3 Wayne R. LaFave, Substantive Criminal Law § 18.1, n.122.1 (2d ed. 2016-2017 Supp.) ("[K]idnapping is deemed 'a continuing crime,' so that 'when a victim is kidnapped, the kidnapping ends only after the victim's release or her death.' ") (quoting State v. Crenshaw , 313 Conn. 69, 95 A.3d 1113, 1129 (2014) ). We also conclude that the evidence in this case is not sufficient to establish that two kidnappings occurred. Viewing the evidence in the light most favorable to the State, that evidence does not support the State's position that A.M. regained her liberty when she was allowed to clean her mouth in the kitchen. When asked why she didn't leave the house after Appellant shoved dog feces in her mouth, A.M. stated, "I thought he was done and I wanted the dog crap out of my mouth." When she went to the sink to rinse her mouth, however, Appellant came up behind her and pushed her head into the cabinet. Although she was released from the floor, there is no indication in the record that she was free to leave the premises, and Appellant's actions immediately after letting A.M. up to rinse her mouth indicate that she had not, in fact, regained *897 her liberty. See 3 Wayne R. LaFave, Substantive Criminal Law § 18.1(c) (2d ed. 2003.) (The term "confines ... suggest[s] nothing about the necessity for the confinement to have some character, temporal or otherwise, in order to support a kidnapping conviction."). Further, we note that A.M. had previously attempted to leave the house with her dog and was prevented from doing so by Appellant.[13]
[¶44] The State's assertions at trial also contradict the argument that A.M. regained her liberty at any point prior to Appellant's arrest. In opening remarks, the State noted that, after Appellant assaulted A.M. with dog feces, he was "not done yet" because he attacked her again as she was washing her mouth in the kitchen sink:
And she tries to calm him down. She tries to say, ["] Just let me up; I promise I'll be quiet,["] because this is a loud event. And he lets her up and she immediately goes to the sink to wash dog feces out of her mouth. And when she does so he comes up from behind her because he is not done yet. And he takes her and starts banging her head up against the cabinet.
In closing, the State asserted that the situation was "escalating" when Appellant attacked A.M. at the sink: "He lets her get up. She goes over to the kitchen sink. And at the kitchen sink he attacks her again. It is escalating. ... And he continues to escalate. Every time he can walk out the door, he doesn't." The State noted that A.M. had tried to leave and suggested that she did not have the opportunity to escape:
What does the knocked-over butcher block tell you about the frenzy in that kitchen after she tried to leave? What does the eight-inch butcher knife on the counter tell you about [Appellant's] intentions when she tried to take the dog and go? How many times could he walk away and stop versus her? When did she ever have an opportunity? Who is escalating and who is trying to calm him down[?]
[¶45] Considering that neither the evidence nor the argument presented by the State at trial supports the theory that A.M. regained her liberty prior to Appellant's apprehension and arrest, we find that Appellant's actions support only one continuing kidnapping offense. Accordingly, we conclude that Appellant's convictions for two counts of kidnapping violate clear and unequivocal protections against imposition of multiple punishments for the same offense. Hawes v. State , 2016 WY 30, ¶ 13, 368 P.3d 879, 884 (Wyo. 2016). The district court's issuance of two convictions and sentences for the same kidnapping offense constitutes plain error. Consequently, we reverse Appellant's second kidnapping conviction.[14]
III. Double Jeopardy-Domestic Battery and Strangulation of a Household Member
[¶46] In his final issue, Appellant contends that separate convictions for strangulation of a household member and domestic battery violate double jeopardy principles because domestic battery is a lesser included offense of strangulation of a household member. Again, because Appellant did not raise the issue below, we review for plain error. Solis , ¶ 61, 315 P.3d at 635.
[¶47] The record demonstrates that Appellant was convicted of both strangulation of a household member and domestic battery. It *898 clearly reflects the error claimed by Appellant. He has met the first requirement in establishing plain error.
[¶48] There is also a clear and unequivocal rule of law applicable to Appellant's case. Several months after Appellant filed his brief, we held that domestic battery is a lesser included offense of the crime of strangulation of a household member. Drakeford v. State , 2017 WY 115, ¶ 10, 402 P.3d 980, 983 (Wyo. 2017). We agreed that "punishing a defendant for both a greater offense and a lesser included offense violates the double jeopardy provisions of the Fifth Amendment to the United States Constitution and of Article 1, Section 11 of the Wyoming Constitution," and we recognized that "this represents a clear and unequivocal rule of law." Id ., ¶ 11, 402 P.3d at 983. Appellant has met the second requirement in establishing plain error.
[¶49] We conclude, however, that Appellant has not proven a clear and obvious transgression of this rule. Appellant asserts that double jeopardy principles prohibit his conviction and sentencing for both a greater offense and a lesser included offense. The State counters that there was no violation of a clear and unequivocal rule of law in this case because Appellant's convictions and sentences were based on two separate acts.
[¶50] The State is correct that when different criminal acts are at issue, one offense is not a lesser included offense of the greater offense, and the defendant may properly be convicted of both crimes. Drakeford , ¶ 13, 402 P.3d at 984 ; See also Redding v. State , 2016 WY 41, ¶ 47, 371 P.3d 136, 149 (Wyo. 2016). In other words, "no double jeopardy issue is implicated" when two different charges are based on separate and distinct conduct. Sam v. State , 2017 WY 98, ¶ 85, 401 P.3d 834, 861 (Wyo. 2017).
[¶51] The State contends that Appellant engaged in distinct acts, at different times and places, for which he was properly convicted of both domestic battery and strangulation of a household member. "First," it asserts, Appellant "committed domestic battery on the way home from the party. When [A.M.] exited her vehicle to look for her keys, [Appellant] pushed her down on the concrete, grabbed her by her hair, and slammed her head against the ground." "Second," the State continues, Appellant "committed strangulation of a household member against [A.M.] inside their apartment. While pinning her down on the floor, he covered [her] mouth and nose with his hand and pressed down until she could not breathe." The State's contention is consistent with the prosecutor's opening statement, in which she delineated all of the charges against Appellant, including "the strangulation count, which is the suffocation of her nose and mouth" and "the domestic violence battery, which shows injuries from head to knee of the violence she endured that night." Defense counsel had a similar understanding of the domestic violence injuries.[15]
[¶52] Appellant concedes that "[t]he only circumstances in which [Appellant] could be convicted of both [crimes] was if the charges related to two separate incidents." He further contends, however, that
[s]uch a circumstance would have required the court to have given a clear instruction to the jury that the incident giving rise to the conviction [for strangulation of a household member] could not be the basis of the conviction [for domestic battery]. A special interrogatory in the verdict form could have been used to assure that the jury based the two convictions on separate incidents.
Appellant continues that, because the district court gave no such instruction or special interrogatory, it cannot be determined that the two convictions were based on separate incidents. Relying on Cecil v. State , 2015 WY 158, ¶ 19, 364 P.3d 1086, 1092 (Wyo. 2015), Appellant asserts that if we cannot determine that the two convictions were based on separate incidents, the conviction on the lesser charge must be reversed.
[¶53] We reject Appellant's argument for several reasons. Under the plain error standard, an appellant must prove "a clear and obvious transgression of that rule of law." Solis , ¶ 61, 315 P.3d at 635 (citation omitted). The State does not carry the burden on *899 appeal to prove that the two convictions were based on separate incidents. That burden is on Appellant, and he has failed to carry the burden of proving that the two convictions were based on the same incident.
[¶54] Also, Appellant did not ask the district court for the instruction or special interrogatory he now contends were necessary. Appellant has cited no legal authority to suggest that the district court was required, sua sponte , to provide the jury with such an instruction or interrogatory. Further, our precedent indicates that even if the State alleges separate incidents without specifying which incidents relate to which charges, the defendant waives this issue if he does not raise it before the trial court. Triplett v. State , 2017 WY 148, ¶ 14, 406 P.3d 1257, 1260 (Wyo. 2017) ; Schuler v. State , 2008 WY 47, ¶ 14, 181 P.3d 929, 932 (Wyo. 2008). As we indicated in Triplett , ¶ 16, 406 P.3d at 1261, Appellant could have raised this issue at arraignment, at any time before trial, or during jury instructions. He could have filed an objection to the information under W.R.Cr.P. 12(b)(2), or he could have sought a bill of particulars to make the allegations more specific. "His failure to raise the issue below precludes him from raising that issue now." Id ., ¶ 16, 406 P.3d at 1261.
[¶55] Finally, we find Appellant's legal authority, Cecil , readily distinguishable from this case. The defendant in Cecil was charged with aggravated assault and battery by threatening to use a drawn deadly weapon. Cecil , ¶ 4, 364 P.3d at 1087. The jury found him innocent of that charge, but convicted him of simple assault. Id ., ¶ 6, 364 P.3d at 1088. This was improper because he was never charged with simple assault and, as we concluded, simple assault is not a lesser included offense of aggravated assault by threatening to use a drawn deadly weapon. Id ., ¶ 17, 364 P.3d at 1091. No such errors occurred in this case, and the reasoning of Cecil does not apply here. In sum, Appellant has not satisfied the plain error standard of review because he has not proven any clear and obvious transgression of a rule of law.
CONCLUSION
[¶56] We reverse Appellant's second kidnapping conviction, and remand to the district court for entry of an order vacating that conviction and sentence. Appellant's remaining convictions are affirmed.
KAUTZ, J., dissenting, in which HILL, J., joins.
[¶57] I concur in the majority's analysis of the Rule 404(b) evidence in this case. I also concur in the majority's conclusion that Mr. Volpi's convictions for both strangulation of a household member and domestic battery should stand. I respectfully dissent from the majority's conclusion that "the evidence in this case is not sufficient to establish that two kidnappings occurred."
[¶58] The offense of kidnapping under Wyo. Stat. Ann., § 6-2-201 (LexisNexis 2017) is a single continuing offense, lasting from the time of the initial unlawful confinement or removal until the victim regains his or her free will. See State v. White, 127 N.C.App. 565, 492 S.E.2d 48, 51-52 (1997) ; "A confinement ends when the victim both feels and is, in fact, free from detention. A separate confinement begins if and when detention is reestablished." Curry v. State , 643 N.E.2d 963, 980 (Ind. Ct. App. 1994) ; State v. Jefferies, 304 S.C. 141, 403 S.E.2d 169, 172 (S.C. Ct.App.1991), vacated on other grounds, 503 U.S. 931, 112 S.Ct. 1464, 117 L.Ed.2d 611 (1992) ("kidnapping is a continuing offense as long as the kidnapped person is deprived of his freedom"); Kemple v. State, 725 S.W.2d 483, 485 (Tex.Ct.App. 1987) ("[k]idnapping is a 'continuing offense.' The abduction does not 'occur' at only one time, but rather is a continuous, ongoing event."); State v. Zimmer, 198 Kan. 479, 426 P.2d 267, 286 (1967), cert. denied, 389 U.S. 933, 88 S.Ct. 298, 19 L.Ed.2d 286 (1967) ("[k]idnaping, which involves the detention of another, is a continuing offense"); People v. La Marca, 3 N.Y.2d 452, 165 N.Y.S.2d 753, 757-58, 144 N.E.2d 420, 424-25 (N.Y. 1957), modified on other grounds, 3 N.Y.2d 933, 167 N.Y.S.2d 955, 145 N.E.2d 892 (N.Y. 1957), cert. denied, 355 U.S. 920, 78 S.Ct. 351, 2 L.Ed.2d 279 (1958) ("[k]idnapping, which involves the detention of another, is, by its nature, a continuing crime").
*900 [¶59] As the majority points out, we recognized a presumption that the legislature intended to create only a single crime when it listed acts constituting the crime in the disjunctive. Solis v. State , 2013 WY 152, ¶¶ 72-77, 315 P.3d 622, 638-639 (Wyo. 2013). In other words, a second act that would independently constitute kidnapping, such as unlawfully removing a victim from his residence, if occurring during the original confinement, is not a separate crime. However, if the original confinement or removal ends, a subsequent confinement or removal constitutes a second crime. People v. Martinez, 150 Cal.App.3d 579, 198 Cal.Rptr. 565, 569 (1984) ; Harington v. Ignacio, 106 F.App'x 570, 571 (9th Cir. 2004).
[¶60] Here the jury found there were multiple kidnappings. The first kidnapping was based on Mr. Volpi's confinement of A.M. Our review, then, must determine whether the evidence supports the jury's conclusion that such confinement ended before the second kidnapping occurred. To make this determination we "examine[ ] the evidence in the light most favorable to the State. We accept all evidence favorable to the State as true and give the State's evidence every favorable inference which can reasonably and fairly be drawn from it. We also disregard any evidence favorable to the appellant that conflicts with the State's evidence." Thompson v. State , 2018 WY 3, ¶ 14, 408 P.3d 756, 761 (Wyo. 2018) quoting Harnden v. State , 2016 WY 92, ¶ 5, 378 P.3d 611, 612-13 (Wyo. 2016) and Pena v. State , 2015 WY 149, ¶ 16, 361 P.3d 862, 866 (Wyo. 2015).
[¶61] A.M.'s testimony provides the evidence of when the first confinement ended, and the second event began. She stated that Mr. Volpi had pinned her to the floor and was suffocating her. She said to him "I'll be quiet, I'll be quiet; please let me rinse out my mouth." At that point she testified "he finally did let me up." Then she testified as follows:
Q. So he let you get up and what did you do once he let you get up? Did you run out that door?
A. I tried to go over to the sink to rinse out my mouth.
Q. Why didn't you just try to leave? Why go to the sink instead of out the door?
A. I thought he was done and I wanted the dog crap out of my mouth. And I didn't know where my dog was and I wasn't leaving him, not in the house with him.
Q. So you go over to the sink and at this point where would you describe the dog feces in reference to your face? I mean, you've been covering your mouth and everything. So where's the dog feces on your body that you mean to rinse it?
A. It's in my mouth and down my throat.
Q. And so you go over to the sink. Are you bending over the sink, trying to get it out?
A. Yeah.
Q. And what is he doing?
A. He comes up behind me and our sink's right here and there's cupboards right here, and he comes up behind me and turns me into these cupboards and grabs me by my hair and shoves my head into the cupboard.
[¶62] This evidence, though sparse, when given every favorable inference which can reasonably be drawn, indicates that A.M. believed the first confinement was over. She said she thought he was done. She chose to care for herself and her dog rather than leave. Those facts also indicate that for that brief period of time she had regained her free will, and, in fact, the confinement was over. The jury reasonably could have concluded as much. I would affirm both convictions for kidnapping.
[¶63] Unfortunately, much of the majority's review discusses evidence indicating Mr. Volpi did not end his confinement of A.M. Although contrary evidence exists, we must not consider such evidence when determining whether the State presented sufficient facts to support the jury's conclusions. Similarly, we should not substitute our judgement for that of the jury.
[¶64] While I would affirm all of Mr. Volpi's convictions, I would remand to the district court to correct an inconsistency between the oral pronouncement of the sentence and the written sentencing order. At the sentencing hearing, the district court ordered that Mr. Volpi's two kidnapping sentences be served concurrently with *901 one another, but consecutive to his sentence for strangulation of a household member. However, the written sentencing order states the first kidnapping sentence will run consecutive to the sentence for strangulation of a household member and the second kidnapping sentence will be served consecutive to the first kidnapping sentence.
[¶65] "An unambiguous oral sentence controls over a written judgment and sentence that conflicts with the court's oral pronouncement." Cubba v. State , 2009 WY 87, ¶ 9, 210 P.3d 1086, 1088 (Wyo. 2009). Further, a district court has a duty to correct a written judgment and sentence if it does not accurately reflect the sentence imposed at the sentencing hearing. Id . (citing Lane v. State , 663 P.2d 175, 176 (Wyo. 1983) ). Here, the district court's oral pronouncement at the sentencing was unambiguous. With respect to the kidnapping sentences, the court stated, "Again each count, those are to be served concurrently, not consecutively, but consecutive to Count 2 and consecutive to the misdemeanors." Therefore, I would remand this matter to the district court for an entry of an order correcting the written sentencing order so it accurately reflects the kidnapping sentences should be served concurrently with one another, as imposed at the sentencing hearing. Duelke v. State , 2018 WY 37, ¶¶ 4, 8, 414 P.3d 1161, 1162 (Wyo. 2018).

Appellant does not challenge his convictions for interference with a peace officer, destruction of property, or possession of a controlled substance. Appellant was also charged with aggravated assault and battery, but he was acquitted of that charge.

See supra ¶ 1.

As to this incident, A.M. testified that she and Appellant had gotten into an argument. The argument escalated and Appellant grabbed her by her shoulders, threw her on the floor, got on top of her, and was choking her when a roommate intervened. Appellant stopped and then left the apartment.

A.M.'s testimony regarding the October incident differed from the district court's description of the incident in the decision letter. See infra ¶26.

A.M.'s trial testimony about the first incident differed significantly from the proffer made by the State. See infra ¶26.

A.M. testified that she did not get off work until 9:00 p.m. The vehicle was stopped by law enforcement at approximately 1:00 a.m. In between, it took A.M. half an hour to locate Appellant. They spent an hour at home before going to the party. They were at the party for a while before leaving.

See supra ¶ 13.

See infra ¶ 35.

Count II was for strangulation of a household member in violation of Wyo. Stat. Ann. § 6-2-509, and Count V was for battery of a household member in violation of Wyo. Stat. Ann. § 6-2-511. For both counts, the term "household member" is defined in Wyo. Stat. Ann. 35-21-102(a)(iv) to include, among others, persons living with each other as if married.

The instruction was derived from Wyoming Criminal Pattern Jury Instruction 6.03A.

Although we have long recognized that a limiting instruction should be given if requested, and we expect that jurors will follow those instructions, at least one commentator, long ago, suggested that the purpose for admission of 404(b) may not matter:
Experienced trial attorneys know that the judge's decision on the admission of uncharged misconduct can be the pivotal ruling in a prosecution. Veteran defense attorneys often plan their trial strategy to avoid the admission of uncharged misconduct evidence. One commentator has dubbed this species of evidence the "Prosecutor's Delight."
It is understandable that prosecutors delight in offering uncharged misconduct against a defendant; both the empirical studies and the cases show that the admission of uncharged misconduct can have a devastating effect on the defense. The available research data indicate that uncharged misconduct evidence can sway the juror. A study at the London School of Economics demonstrated that the admission of a defendant's uncharged crimes significantly increases the likelihood of a finding of guilt. The Chicago Jury Project reached the same conclusion. The Chicago researchers concluded that, as a practical matter, the presumption of innocence operates only for defendants without prior criminal records. Uncharged misconduct evidence effectively strips the defendant of the presumption of innocence.
Edward J. Imwinkelried, The Worst Surprise of All: No Right to Pretrial Discovery of the Prosecution's Uncharged Misconduct Evidence , 56 Fordham L. Rev. 247, 248-49 (1987).

The record reflects that GARF "will help women that are in domestic abuse relationships." The record does not indicate what the initials stand for, but we believe it to be Gillette Abuse Refuge Foundation.

In response to the dissent, we note that the standard of review requires us to give the State's evidence all favorable inferences that can "reasonably and fairly be drawn from it." We cannot reasonably or fairly infer that A.M. was free to leave based solely on her subjective belief, during the brief period that elapsed between her release from the floor and Appellant's assault at the kitchen sink, that the confinement was over. Further we question whether, under the facts of this case, A.M.'s subjective belief that Appellant "was done" is relevant to the determination of whether Appellant continued to confine her. See Levengood v. State, 2014 WY 138, ¶ 19, 336 P.3d 1201, 1205, (Wyo. 2014) ("We are not concerned with the subjective reaction of the victim. Instead, we must objectively consider the actions of the defendant, and decide whether a rational trier of fact could infer from Mr. Levengood's words and acts an intention to use a drawn deadly weapon to inflict pain, injury, or punishment.").

Because we reverse the second kidnapping conviction, we need not address Appellant's claims with respect to the discrepancy between the court's written judgment and the oral pronouncement of his sentence for the two kidnapping convictions.

See supra ¶35.